United States District Court
Southern District of Texas
FILED

JUL 0 8 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MANUEL SANDOVAL-HERRERA, )
)
v. )   C.A. B-02-138
)
AARON CABRERA, INS )
  ACTING DIRECTOR, HLG/DO and )
)
JOHN ASHCROFT, ATTORNEY )
  GENERAL OF THE UNITED STATES. )
_____ )

**PETITION FOR WRIT OF HABEAS CORPUS**

Manuel Sandoval-Herrera, ("Mr. Sandoval"), by and through the undersigned, files the instant Petition for Writ of Habeas Corpus, under 28 U.S.C. §2241, and *INS v. St. Cyr,* 121 S.Ct. 2271 (2001).

### I. JURISDICTION AND VENUE

1. Petitioner Manuel Sandoval-Herrera is under an administratively final order of removal. Furthermore, his temporary proof of lawwful permanent resident status is about to expire, and although he never received the customary "bag and baggage" letter, (Form I-166), advising him of a specific date to report for deportation, agents of the INS have gone looking for him, in order to execute the order of removal. Thus there are significant restrictions on his liberty not shared by the populace at large, and he is in "custody" within the meaning of *Jones v. Cunningham,* 371 U.S. 236,240 (1963). (Petitioner's Exhibits A and B, incorporated by reference).

2. Respondent Cabrera maintains his offices, and Petitioner's removal proceedings were conducted, in Cameron County, Texas, within the jurisdiction of this Court.

### II. THE PARTIES

3. Manuel Sandoval-Herrera has been a lawful permanent resident, ("LPR"), since 1988, and resides in Cameron County, Texas.

4. Aaron Cabrera is Acting Director HLG/DRO of the Immigration and Naturalization Service, and is sued in his official capacity only.

5. Respondent John Ashcroft is the Attorney General of the United States. He is also sued in his official capacity only.

### III. THE FACTS

6. Manuel Sandoval is a native and citizen of Mexico. He entered the United States as a lawful permanent resident on or about July 25, 1988 and has resided here continuously since that date. Mr. Sandoval's entire family is lawfully in the United States. He has a history of steady employment, and has other equities.

7. On or about November 7, 1996, Mr. Sandoval pled guilty to the offense of (simple) possession of cocaine in Cameron County, Texas, which offense was committed June 22, 1996. He was placed on probation. At that time, this offense was not considered to be an aggravated felony, and he was eligible for relief from removal, under *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995).

8. In resolving the criminal case, Mr. Sandoval relied on the fact that this disposition permitted him to seek relief from deportation. Had he known, or even suspected, that it would later be interpreted as causing mandatory deportation, with no possibility of relief, or ever returning lawfully to the United States, he would have fought the charges.

9. An NTA was issued on July 14, 1997. It alleged, and Mr. Sandoval conceded, the above facts relating to nationality and entry. It also alleged that he had been "convicted" of possession of a controlled substance, to wit, cocaine. Removability was charged under 8 U.S.C. §1227(a)(2)(B)(i), for conviction of an offense relating to a controlled substance. Mr. Sandoval urged that he was not subject to removal, in accordance with *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995), and, in the alternative,

requested an opportunity to seek relief, in the form of cancellation of removal, under 8 U.S.C. §1229b(a).

10. While his case was pending before the Immigration Judge, the Fifth Circuit issued *U.S. v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), holding that, for purposes of the Sentencing Guidelines, whether an offense was a felony, and therefore, an aggravated felony, would be determined by whether the person was considered to have been convicted of a felony under state law. Because possession of any amount of cocaine is a felony in Texas, based on that decision, the Immigration Judge concluded that *Matter of L-G-* was invalid, and that Mr. Sandoval was ineligible for relief. Therefore, on January 15, 1999, the Judge ordered that he be removed to Mexico. Mr. Sandoval filed a timely appeal to the BIA.

11. Shortly thereafter, the BIA issued *Matter of K-V-D-*, Int. Dec. 3422 (BIA 1999), concluding that the term "aggravated felony" could have different meanings in the context of immigration law, and the Sentencing Guidelines, and reaffirming *Matter of L-G-*. Under this decision, Mr. Sandoval was still eligible for cancellation of removal. However, the Board did not immediately adjudicate his appeal. Rather, it remained pending until April of 2002.

12. While his appeal was pending at the BIA, the Fifth Circuit issued *U.S. v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001), reaffirming *U.S. v. Hinojosa-Lopez*. The Court also criticized *Matter of K-V-D-*, under which this question was resolved by analogy to federal law. However, the criticism of *K-V-D-* was clearly dicta.[1] Further, the retroactive application of *Hernandez-Avalos*

---

[1]   As the Court noted therein, *id.*, at 509:

[I]f we were reviewing Hernandez's removal order on direct appeal, and if the issue of statutory interpretation were properly preserved for review, we

raises reliance issues, similar to those characterized in *INS v. St. Cyr,* 121 S.Ct. 2271 (2001), as creating serious constitutional problems. Nonetheless, the BIA dismissed Mr. Sandoval's appeal on April 3, 2002, and ordered his removal to Mexico.

11.  On information and belief, Mr. Sandoval asserts that a significant number of long-term LPRs who were otherwise similarly situated, in that on or after October 1, 1996, they pled guilty to offenses involving simple possession of controlled substances, were placed in removal proceedings in this judicial district on or after April 1, 1997, and were granted cancellation of removal by Respondents, prior to the issuance of *U.S. v. Hernandez-Avalos.*

12.  Given his lengthy residence in the U.S., his strong family ties, employment history, and other equities, it is highly likely that Mr. Sandoval would have earned cancellation of removal, had he received the opportunity to apply for said form of relief.

### V.  THE CAUSES OF ACTION

Petitioner asserts that the deprivation of liberty complained of herein violates the laws and Constitution of the United States, as well as international law and treaty obligations with his native country of Mexico, which claims are cognizable in habeas corpus under 28 U.S.C. §2241.

#### 1.  STATUTORY CONSTRUCTION
#### a.  AGGRAVATED FELONY

Mr. Sandoval fist urges that the Board erred as a matter of law in its conclusion that *U.S. v. Avalos-Hernandez, supra,* controls the resolution of the question of whether the disposition of the criminal charges constitutes an aggravated felony. The language

---

would hold that the BIA's interpretation of section 924(c) [in *Matter of K-V-D-*] is plainly incorrect and that Hernandez was an aggravated felon.

therein disapproving of *Matter of K-V-D-* was clearly *dicta*, and the Board should not have applied it to Mr. Sandoval. To the contrary, Mr. Sandoval asserts that the Board correctly decided *Matter of K-V-D-*, and that it erred in not applying said decision herein. *See, Gerbier v. Holmes*, 280 F.3d 297 (3rd Cir. 2002) (State felony drug conviction without trafficking element constitutes an "aggravated felony" under the INA, thus rendering alien ineligible for cancellation of removal, only when that same crime would be punishable as a felony under federal Controlled Substances Act).

### b. *MATTER OF ROLDAN, SUPRA.*

Mr. Sandoval also urges that, as a question of law, *Matter of Roldan, supra*, was incorrectly decided, and that (new) 8 U.S.C. §1101(a)(48)(A) was not intended to, and did not, legislatively overrule *Matter of Manrique, supra*. *See*, Dissenting Opinion by Board Member Lory Rosenberg, in which Board Members Villageliu, and Espenoza, joined. (*Salazar v. Trominski, supra*, Exhibit A, 23 I&N Dec. at 237-251). *See also*, Dissenting Opinion of Board Member Anthony Moscato, in which Board Member Villageliu, joined. (*Id.*, 23 I&N Dec. at 251-252).

### 2. EQUAL PROTECTION
### a. FEDERAL FIRST OFFENDER ACT

Mr. Sandoval next asserts that, for the reasons set forth in *Lujan-Armendariz*, 222 F.3d 728 (9th Cir.2000), it violates Equal Protection for a determination of whether a given disposition of criminal charges for simple possession of a controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was processed in state, or federal, court.

### b. DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Sandoval also asserts that, given the national character of

immigration law, it violates Equal Protection for the result of his case to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, he might not be subject to removal at all, and that, had he been placed in such proceedings in any jurisdiction other than the Fifth, and most particularly, within the Third Circuit, he would have been held to qualify for cancellation of removal, which relief, he urges, he would in all likelihood have earned in the exercise of discretion.

### c. DIFFERING RESULTS BASED ON TIMING OF THE PROCEEDINGS

Had Mr. Sandoval's case been heard between March 3, 1999, and May 11, 2001, (after the BIA issued *Matter of Roldan*, and before the Fifth Circuit decided *Hernandez-Avalos*), he would have been considered to subject to removal, but eligible for cancellation of removal, and would have most probably earned such relief in the exercise of discretion. It violates Equal Protection for the difference between remaining in the U.S. as a lawful permanent resident, and being removed, and permanently barred from returning lawfully, to be based solely on the timing of the proceedings. *See, Logan v. Zimmerman Brush*, 455 U.S. 422 (1982) (finding Due Process, and, per concurring opinion, Equal Protection violations where statute terminated claims not receiving timely hearings.)

### 3. SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Sandoval has a fundamental liberty interest in being able to live and work in the U.S., and to remain here with his family. *See*, Dissenting Opinion of Board Member Rosenberg, *Salazar v. Trominski*, supra at 238. *See also, Landon v. Plasencia*, 459 U.S. 21,34 (1982), citing *Bridges v. Wixon*, 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Sandoval enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Sandoval asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4. PROCEDURAL DUE PROCESS

Mr. Sandoval also asserts that the Board's decision deprives him of Procedural Due Process, as seen by another series of Supreme Court cases, involving "fair notice." To apply *Matter of Roldan* and *U.S. v. Hernandez-Avalos* retroactively converts a disposition which, at the time of his plea, would have permitted him to seek relief from

deportation, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.* (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof.

Therefore, §1101(a)(48)(A), as interpreted and applied herein, is unconstitutional in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker,* 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; see id. at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); see, e.g., *Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence

> subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal punishment, is involved. As the Supreme Court recently held in *BMW of North America v. Gore,* 517 U.S. 559, 574 (1996) (footnote 22 in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22
>
> FN22. See *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho,* 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties.*

For a lawful permanent resident such as Mr. Sandoval, there can be no question but that deportation is a "civil penalt[y]" imposed as a result of his criminal "conviction" for possession of cocaine. It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia,*

9

*supra*, and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v. Gore, supra*, it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." [2]

### 5.  INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally, Mr. Sandoval urges that the instant order violates international law, and treaty obligations with Mexico, his country of origin. *See, Nicholson v. Williams*, ____ F.Supp.2d ____, (E.D.N.Y. March 18, 2002), 2002 WL 448452, at *78: [3]

> Substantive due process comes into play where, regardless of the procedures followed, a governmental decision or action is so contrary to a fundamental right that it cannot be countenanced. *See Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Substantive due process rights bar "certain government actions regardless of the fairness of the procedures used to implement them ...."). Substantive due process depends upon the outcome itself.

*See also, Beharry v. Reno*, 183 F.Supp.2d 584 (E.D.N.Y. 2002) [4]

---

[2] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge*, 341 U.S. 223,231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

[3] Although *Nicholson* involved the removal of children from the parent, rather than removal of the parent from the child, the principles are the same.

[4] *Beharry* concluded that relief was still available where an offense was committed before IIRIRA, but the guilty plea did not occur until after its enactment.

10

holding that where a statute appears to contradict international law, an appropriate remedy is to construe it so as to resolve the contradiction.

Respectfully Submitted,

*[signature: Lisa S. Brodyaga]*

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178, Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax)

**VERIFICATION OF COUNSEL**

I, Lisa S. Brodyaga, hereby certify that I am familiar with Petitioner's case and that the facts as stated with respect thereto are true and correct to the best of my knowledge and belief.

*[signature: Lisa S. Brodyaga]*
July 8, 2002

**VERIFICATION OF PETITIONER**

I, Manuel Sandoval, certify that the foregoing was explained to me by Attorney Lisa Brodyaga, and that the facts within my knowledge as stated therein are true and correct to the best of my knowledge and belief.

*MANUEL SANDOVAL*
July 8, 2002

**CERTIFICATE OF SERVICE**

I, Lisa S. Brodyaga, hereby certify that a courtesy copy of the foregoing, with exhibits, was personally delivered to the office of Nancy Masso, AUSA, Brownsville, Texas, this 8th day of July, 2002.

*[signature]*

11

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MANUEL SANDOVAL-HERRERA            )
                                   )
v.                                 )     C.A.   B-02.138
                                   )
AARON CABRERA, INS                 )
  ACTING DIRECTOR, HLG/DO and      )
JOHN ASHCROFT, ATTORNEY            )
  GENERAL OF THE UNITED STATES.    )
_____)


EXHIBIT "A" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

PAGE 01

THELMA GARCIA ATTY

Decision ... Board of Immigration Appeals

05/15/2002  07:44  9564282791

**U.S. Department of Justice**
Executive Office for Immigration Review

Falls Church, Virginia 22041

Date: APR 03 2002

File: A## ### ### - Harlingen

In re: MANUEL SANDOVAL HERRERA

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Thelma O. Garcia, Esquire

ON BEHALF OF SERVICE: Thomas M. Bernstein
Assistant District Counsel

CHARGE:

Notice: Sec. 237(a)(2)(B)(i), I&N Act [8 U.S.C. § 1227(a)(2)(B)(i)] -
Convicted of a controlled substance violation

APPLICATION: Termination; cancellation of removal

ORDER:

PER CURIAM. The respondent timely appeals an Immigration Judge's January 15, 1999, decision finding him removable under section 237(a)(2)(B)(i) (convicted of a controlled substance violation) and ineligible for the relief of cancellation of removal because that offense constitutes an aggravated felony as defined in section 101(a)(43)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1101(43)(B). See section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a)(3).

It is undisputed that the respondent was convicted in the 103d District Court in Cameron County, Texas, based on his plea of guilty to the offense of possession of a controlled substance (cocaine), and sentenced to a 2-year suspended sentence of confinement and a 5-year period of supervision. The applicable provision of the Texas Penal Code is not specified on the judgment of conviction. However, the conviction document states on its face that the offense is a state felony (Exh. 2).

On appeal, the respondent maintains that this offense is not an aggravated felony so as to bar a grant of cancellation of removal. He also revisits his contention below that he does not have a conviction pursuant to our decision in Matter of Manrique, 21 I&N Dec. 58 (BIA 1995). Our recent decision in Matter of Salazar, 23 I&N Dec. 223 (BIA 2002) is dispositive of both arguments. We held in Matter of Salazar, supra, that we will follow the precedent decisions of the Fifth Circuit in United States v. Hernandez-Avalos, 251 F.3d 505 (5th Cir 2000, cert. Denied, 122 S. Ct. 305 (2001) and United States v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1991) in cases, such as this one, which

A30 925 883

arise in its jurisdiction. In the Fifth Circuit, a felony drug possession conviction is an aggravated felony as defined in section 101(a)(43)(B) of the Act. *Id.* In *Matter of Salazar, supra,* we also reaffirmed our decision in *Matter of Roldan,* Interim Decision 3377 (BIA 1999), which held that state rehabilitative measures have no effect in ameliorating the consequences of a conviction satisfying the definition at section 101(a)(48) of the Act.

Therefore, even if the respondent had successfully established that he was the beneficiary of a state rehabilitative measure, he has a conviction for immigration purposes. Moreover, under Fifth Circuit precedent, that conviction is an aggravated felony which bars him from a grant of cancellation of removal. *Matter of Salazar, supra.* The appeal is dismissed.


FOR THE BOARD

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MANUEL SANDOVAL-HERRERA ) | |
| ) | |
| v.                       ) | C.A. B-02.138 |
| ) | |
| AARON CABRERA, INS       ) | |
|   ACTING DIRECTOR, HLG/DO and ) | |
| JOHN ASHCROFT, ATTORNEY  ) | |
|   GENERAL OF THE UNITED STATES. ) | |
| _____ ) | |

**EXHIBIT "B" IN SUPPORT OF**

**PETITION FOR WRIT OF HABEAS CORPUS**

