4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 1 1 2002

Michael N. Milby
Clerk of Court

MANUEL SANDOVAL-HERRERA,          )
                                  )
v.                                )
                                  )   CIVIL ACTION NO. B-02-138
AARON CABRERA, ACTING             )
DIRECTOR, HLG/DO, THE             )
IMMIGRATION & NATURALIZATION      )
SERVICE, and                      )
JOHN ASHCROFT, UNITED STATES      )
ATTORNEY GENERAL                  )
_____ )


RESPONDENTS' RETURN AND
MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS


COME NOW the Respondents, by and through Michael T. Shelby,

United States Attorney for the Southern District of Texas, and file

this Return and Motion to Dismiss the Petition for Writ of Habeas

Corpus in this case.  The petition for writ of habeas corpus should

be dismissed because the issues presented therein have been decided

by the Fifth Circuit Court of Appeals.[1]

---

[1] The issues presented and arguments made herein are identical to
those presented to this Court in Salazar-Regino v. Trominski, et
al., Civil Action No. B-02-045.

## STATEMENT OF THE FACTS

The Petitioner, Manuel Sandoval-Herrera ("Sandoval-Herrera") entered the United States as a lawful permanent resident on July 25, 1988.  Government Exh. "A".  On July 24, 1996, a criminal indictment was filed charging that Sandoval-Herrera knowingly and intentionally possessed a usable quantity of a controlled substance, to wit: cocaine, by aggregate weight, including any adulterants and dilutants in of less than one gram.  He was entered a plea of guilty on November 7, 1996, in the District Court, Cameron County, Texas, to the offense of possession of a controlled substance, a state jail felony.  The state Court found Sandoval-Herrera guilty and he was sentenced to two years in a state jail facility.  However, the imposition of the sentence was suspended and Sandoval-Herrera was placed on community supervision for a period of five years. Government Exh. "B".

The Immigration and Naturalization Service (the "Service") issued a Notice to Appear to Sandoval-Herrera on July 14, 1997, charging that he was removable for having been convicted of a violation of a law relating to a controlled substance pursuant to §237(a)(2)(B)(i) of the Immigration and Nationality Act ("Act"), 8 U.S.C. §1227 (a)(2)(B)(i).  Government Exh. "C".  Sandoval-Herrera admitted the allegations of fact set out in the Notice to Appear and conceded removability for a violation of a law relating to a

2

controlled substance.  He was able to retain legal counsel who later confirmed Petitioner's admissions to the factual allegations, but requested to withdraw the concession of removability based on the Board of Immigration Appeals' ("Board") holding in In Re Manrique, Int. Dec. 3250 (BIA 1995).  The immigration judge found that Sandoval-Herrera failed to meet the second and fourth prongs of the Manrique test.  He, therefore, found Sandoval-Herrera removable as charged. Government Exh. "D".

Sandoval-Herrera he sought to have his removal cancelled by filing an application pursuant to §240A(a) of the Act.  The immigration judge, applying U.S. v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997), found Sandoval-Herrera had been convicted of an aggravated felony and, therefore, was ineligible for the requested relief.  Government Exh. "D".  As a consequence, the immigration judge ordered his removal to Mexico.  Government Exh. "E".

Sandoval-Herrera reserved his right to appeal and timely filed his Notice of Appeal with the Board of Immigration Appeals ("Board").  The Notice of Appeal alleged that the immigration judge erred in pretermitting the relief application and should have terminated the proceedings based on the Board decision in Manrique, that the immigration judge erred in characterizing the drug offense as an aggravated felony, and that the immigration judge erred in pretermitting Sandoval-Herrera's application for relief based on that finding.  Government Exh. "F".

In his appeal brief, Sandoval-Herrera argued that under Matter of K-V-D-, Int. Dec. 3422 (BIA 1999), Petitioner's conviction would not be characterized as an aggravated felony and he would be eligible to apply for cancellation of removal. In a footnote, Sandoval-Herrera "reserve[d] the right, on remand, to present additional evidence on the Manrique issue." Government Exh. "G".

In a decision dated April 3, 2002, the Board dismissed Sandoval-Herrera's appeal. The Board agreed with the immigration judge that Sandoval-Herrera's conviction for drug possession did amount to a conviction of an aggravated felony, making him statutorily ineligible for cancellation of removal. Government Exh. "H".[2]

## ARGUMENT

**I. SANDOVAL-HERRERA HAS BEEN CONVICTED OF AN OFFENSE THAT IS A VIOLATION OF A LAW RELATING TO A CONTROLLED SUBSTANCE BECAUSE HE WAS ADJUDGED GUILTY BY A TEXAS STATE CRIMINAL COURT AND SENTENCED TO TWO YEARS IN A STATE JAIL FACILITY, EVEN THOUGH THE IMPOSITION OF THE SENTENCE WAS SUSPENDED AND SANDOVAL-HERRERA WAS PLACED ON FIVE YEARS COMMUNITY SUPERVISION.**

Sandoval-Herrera argues that he is not removable as charged because he is not properly considered convicted under the

---

[2] The Board referenced Matter of Salazar-Regino, 23 I&N Dec. 223 (BIA 2002) which is the Board precedent decision giving rise to the pending writ of habeas corpus before this Court - Salazar-Regino v. Trominski, et al., Civil Action No. B-02-045.

definition set forth at §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48).  Because Sandoval-Herrera's petition is dependant on the construction of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), the Court should have an understanding of the history and policy concerns that determined whether an alien would be considered to be convicted for immigration purposes prior to 1996.

Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3546 (September 30, 1996) ("IIRIRA"), the Act did not contain a definition of the term "conviction."  Its meaning was determined on a case-by-case basis in administrative and judicial decisions. Depending upon the policies and procedures involved, an alien's guilty plea and criminal disposition might -- or might not -- constitute a "conviction" for immigration purposes.

For example, the Board had a 40-year policy that a state conviction for a crime involving moral turpitude which had been set aside or vacated for rehabilitative reasons would not count as a conviction for deportation purposes.  See Matter of Ozkok, 19 I & N Dec. 546, 548-59 (BIA 1988); Matter of Ibarra-Obando, 12 I & N Dec. 576 (BIA 1966; A.G. 1967); Matter of G-, 9 I & N Dec. 159 (BIA 1960; A.G. 1961); Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).[3]  The Attorney General refused to extend this policy to drug

---

[3]    This policy was repeatedly challenged within the agency during the 1960's, but the Board maintained its policy toward expunged or vacated state convictions involving moral turpitude

5

convictions, however.  Thus, in 1959 the Attorney General decided
that an alien's drug conviction would still count for immigration
purposes, regardless of whether it had been vacated, expunged, or
dismissed for rehabilitative reasons under state law, because this
would promote uniform application of the immigration laws and would
be consistent with Congress' strict policy against drug offenders.
Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).

In 1972, the First Circuit Court of Appeals ("First Circuit"),
decided not to consider a conviction that had been set aside under
the Federal Youth Corrections Act ("FYCA") to be a "conviction" for
immigration purposes, because the First Circuit made the policy
decision that it was more important to give greater priority to
Congress' criminal policy of leniency toward youthful offenders
than to its immigration policy of deporting drug offenders.  Mestre
Morera v. INS, 462 F.2d 1030 (1st Cir. 1972).  Two years later, in
1974, the Board also made this policy choice, deciding not to
consider a drug charge that had been expunged under the FYCA to be
a conviction for immigration purposes.  Matter of Zingis, 14 I & N
Dec. 621 (BIA 1974).

That same year then-Solicitor General Bork urged the Board to
construe the term "conviction" generously in favor of aliens, give
effect to state rehabilitative statutes, and extend to state

---

because the policy  was longstanding and there was no congressional
intent to the contrary.  See Matter of G-, 9 I & N at 164-65.

6

youthful and first-time drug offenders guilty of simple possession

the same policy of leniency the Board had extended to federal

offenders.  Matter of Andrade, 14 I & N Dec. 651, 654 (BIA 1974)

(Memorandum of Solicitor General).  The Board followed this

recommendation, holding that the Federal First Offender Act

("FFOA") was the equivalent of the FYCA, and that as a matter of

policy a drug conviction "expunged" under the FFOA, or a state

"counterpart," would not be considered a conviction for immigration

purposes.  Matter of Werk, 16 I & n Dec. 234 (BIA 1977);  Matter of

Kaneda, 16 I & N Dec. 677 (BIA 1979);  Matter of Haddad, 16 I & N

Dec. 253 (BIA 1977).  The Board chose to apply this new policy

narrowly, however, and considered drug offenders who were given

rehabilitative treatment under state statutes that were broader in

scope than the federal first-offender statute to have a

"conviction" for immigration purposes.  Matter of Deris, 20 I & N

Dec. 5 (BIA 1989).

      The policy decisions were made against the backdrop of an

administrative construction of "conviction" that also required the

following:  (1) a judicial finding of guilt, (2) some court action

removing a defendant's case from active consideration, such as a

fine, sentence, or suspension of sentence, and (3) that the

disposition was considered to be a conviction by the state, at

least for some purpose.  See Matter of L-R, 8 I & N Dec. 269 (BIA

1959).  By 1988, however, the Board had concluded that its

7

interpretation of what constituted a conviction was unsatisfactory,
because it did not fully encompass conviction-deferral procedures
or prejudgment probation, _i.e._ dispositions in which aliens
formally admitted their guilt but thereafter deferred proceedings
and avoided a formal conviction, through a variety of state
procedures.  See Matter of Ozkok, 19 I & N Dec. 546.  In addition,
the Board was concerned that the variety of state rehabilitative
procedures and the rulings regarding expungements were leading to
"anomalous and unfair results" and were permitting aliens who were
clearly guilty of criminal conduct, and whom Congress intended to
be considered convicted, to escape the immigration consequences of
their conduct.  Id. at 551. The Board adopted what it hoped would
be a uniform federal standard defining "conviction." Id.  For
formal judgments, the Board concluded that it would consider a
person to be convicted if "the Court has adjudicated him guilty or
has entered a formal judgment of guilt."  Id.

For "deferred adjudications"  -- where a formal judgment was
deferred or  withheld pending probation --  the Board decided that
a "conviction" should exist for immigration purposes if the
following requirements were met:

> (1)  a judge or jury has found the alien guilty
> or he has entered a plea of guilty or nolo
> contendere or has admitted sufficient facts to
> warrant a finding of guilt;
>
> (2)  the judge has ordered some form of
> punishment, penalty, or restraint on the

> person's liberty to be imposed (including but
> not limited to incarceration, probation, a fine
> or restitution, or community-based sanctions
> such as a rehabilitation program, a work-
> release or study-release program, revocation or
> suspension of a driver's license, deprivation
> of non-essential activities or privileges, or
> community service); and
>
> (3)  a judgment or adjudication of guilt may be
> entered if the person violates the terms of his
> probation or fails to comply with the
> requirements of the court's order, without
> availability of further proceedings regarding
> the person's guilt or innocence of the original
> charge.

Matter of Ozkok, 19 I & N Dec. at 551-52.

This did not lead to the uniformity of result the Board had

intended.  Instead, criminal aliens who pled or were found guilty

of an offense and had been sentenced to probation could still

escape the immigration consequences of their conduct depending on

the state procedures involved.  Compare Martinez-Montoya v. INS,

904 F.2d 1018, 1021 (5th Cir. 1990) (holding that Texas guilty

plea, withheld conviction, and probation is not a conviction for

immigration purposes), with Yanez-Popp v. INS, 998 F.2d 231 (4th

Cir. 1993) (holding that Maryland guilty plea without entry of

judgment, plus probation, is a conviction) and Molina v. INS, 981

F.2d 14 (1st Cir. 1992) (holding that Rhode Island nolo contendere

plea plus probation is a conviction).

In the 1990s, the Board reconsidered its policy toward first-

time state drug offenders whose convictions had been vacated or

expunged.  In <u>Matter of Manrique</u>, Int. Dec. 3250, 1995 WL 314732
(BIA 1995), the Board decided that it would not consider a vacated
state drug offense to be a conviction for immigration purposes if
(1) the alien was convicted of simple possession; (2) it was his
first offense; (3) he had received no previous first-offender
treatment, and (4) the court entered an order pursuant to a state
rehabilitative statute under which "the alien's criminal
proceedings have been deferred pending successful completion of
probation or the proceedings have been or will be dismissed after
probation."  <u>Id</u>. at 12.

Thus, as shown above, by 1996 there was no one, uniform
federal definition of conviction for immigration purposes.
Instead, there were a variety of exceptions that had evolved by
balancing concerns about finality, respect for state dispositions,
uniformity of results, strict federal drug policies, federal
rehabilitation policies for youthful offenders and first-time drug
offenders -- and by attempting to take into account the
distinctions between conviction-deferral or pre-judgment probation
procedures and post-conviction expungement procedures.

These various exceptions caused discrepant results.  Depending
on the procedures and competing policies involved, an alien who
admitted his guilt and was given some form of probation, and
subsequently obtained a dismissal or vacatur of the charge might,
or might not, be convicted for federal immigration purposes.    The

10

problems of uneven enforcement of federal immigration laws, and of aliens escaping the consequences of their criminal conduct because of a variety of rehabilitative procedures, which the Board had sought to remedy in Ozkok, still remained.  See generally Matter of Ozkok, 19 I & N Dec. at 550 -51.

It was in this context that Congress enacted IIRIRA, which was signed by the President on September 30, 1996.  IIRIRA added a new provision to the Act.  Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), sets forth for the first time a uniform statutory definition of the term "conviction."  See IIRIRA §322(a) codified at §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) (1998).  That new definition states as follows:

> (A)  The term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where--
>
> (i)  a judge or jury as found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.
>
> (B)  Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.

See §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48).  The Joint Conference Report commented on the congressional intent in drafting this provision as follows:

> This section deliberately broadens the scope of the definition of "conviction" beyond that adopted by the Board of Immigration Appeals in Matter of Ozkok, 19 I & N Dec. 546.  As the Board noted in Ozkok, there exist in the various States a myriad of provisions for ameliorating the effects of a conviction.  As a result, aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon a conviction.  Ozkok, while making it more difficult for alien criminals to escape such consequences, does not go far enough to address situations where a judgment of guilt or imposition of sentence is suspended, conditioned upon the alien's future good behavior.  For example, the third prong of Ozkok requires that a judgment or adjudication of guilt may be entered if the alien violates a term or condition of probation, without the need for any further proceedings regarding guilt or innocence on the original charge.  In some States, adjudication may be "deferred" upon a finding or confession of guilt, and a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence.  In such cases, the third prong of the Ozkok definition prevents the original finding or confession of guilt to be considered a "conviction" for deportation purposes.
>
> This new provision, by removing the third prong of Ozkok, clarifies Congressional intent that even in cases where adjudication is "deferred," the original finding or confession of guilt is sufficient to establish a "conviction" for purposes of the immigration laws.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) 1996 WL 563320 *496-97 [Leg.History](emphasis added).

Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), creates a uniform definition of conviction that is no longer dependent upon the vagaries of state law, and that requires an alien who has pled guilty and received a deferred adjudication and some form of probation to be considered convicted for immigration purposes, regardless of whether there are further proceedings available on the issue of guilt or innocence upon his violation of probation. Moosa v. INS, 171 F.3d 994, 1004-06 (5th Cir. 1999); see also Matter of Punu, Int. Dec. 3364 (BIA 1999) (the third prong of Ozkok for determining whether a conviction exists with regard to deferred adjudication has been eliminated by §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) and deferred adjudication in Texas is a conviction for immigration purposes); Matter of Roldan-Santoyo, Int. Dec. 3377 (BIA 1999) (an alien has been convicted for immigration purposes where there is a finding or admission of guilt and some punishment is imposed).

As shown, Sandoval-Herrera pled guilty in state court to possession of cocaine and was placed on probation. Pursuant to §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), this properly constitutes a conviction because there was a formal judgment of guilt. Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48),

eliminates the prior administrative and judicial exceptions for state deferred adjudications, prejudgment probations, vacated or expunged offenses, or first-time state drug offenses.   The plain reading of the statute supports this conclusion.

> A.   Congress' intent is clear and unambiguous:  the plain language of the statute requires only a formal judgment of guilt, or a plea and some form of restraint on liberty, and there is no exception for vacated, dismissed, or expunged convictions or first-time drug offenses of simple possession, and none may be implied.

The starting point for statutory construction is the language of the statute.  See INS v. Phinpathya, 464 U.S. 183, 188 (1984); see also INS v. Cardoza-Fonseca, 480 U.S. 421. 431 (1987).  The plain meaning of the words used is the paramount indicia of congressional intent.  Cardoza-Fonseca, 480 U.S. at 431.  It is assumed that the legislative purpose is expressed by the plain meaning of the words used.  Phinpathya, 464 U.S. at 189.

The plain language of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), states that "the term 'conviction' means . . . a formal judgment of guilt of the alien entered by a court." §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A).  There is no question that Sandoval-Herrera's disposition comes squarely within this definition, because there was a fromal finding of guilt entered by a Texas criminal court.

When a definition declares what a term "means" -- as opposed to what it "includes" -- it excludes any meaning that is not stated. Colautti v. Franklin, 439 U.S. 379 (1978). In addition, as the Supreme Court has made very clear, exceptions to a statutory definition of "conviction" must be expressly stated and may not be implied. See Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 111 (1983), superseded by statute as stated in United States v. Sherbondy, 865 F.2d 996 (9th Cir. 1988); Andrus v. Glover Construction Co., 446 U.S. 608 (1980). There are no exceptions for the kinds of state dispositions that the Board previously determined would not be considered a "conviction" for reasons of policy, such as vacated or expunged state convictions, or first-time drug offenses of simple possession under federal or state law.

Since this is the case, Sandoval-Herrera has been "convicted" for federal immigration purposes under the plain meaning of the statute. He was found guilty of possessing cocaine and he was given five years community supervision after the imposition of his two-year jail sentence was suspended.  . It is clear that Congress intended him to be considered convicted for immigration purposes. Congress has spoken to the precise question at issue. Its intent is clear.

> B.   Congress' intent is also clear and
> unambiguous, because the Committee Report
> shows that  Congress intended to
> "broade[n]" the definition of
> "conviction," eliminate the effects of

> ameliorating statutes, make guilt not
> rehabilitation  the dispositive factor,
> and prevent aliens who are guilty of
> criminal conduct from escaping the
> immigration consequences of their crimes.

A clear statement of legislative purpose in a committee report is powerful evidence of Congress' intent and should be given effect.  See Cardoza-Fonseca, 480 U.S. 428; Mastro Plastics Corp. v. NLRB, 350 U.S. 270 (1956); Church of the Holy Trinity v. United States, 143 U.S. 457 (1892).

Congress explicitly stated in the Committee Report that the purpose of adding §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), was to "**deliberately broade[n]**" the preexisting definition of a conviction set forth in Ozkok.  See H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) (emphasis added).  This shows that Congress was dissatisfied with the preexisting interpretation of what constituted a conviction, and intended to expand it to include more kinds of dispositions than previously covered -- thus clearly encompassing Sandoval-Herrera's first-time state drug offense, which previously would not have qualified as a conviction under Matter of Manrique.

The Committee Report shows that Congress clearly intended the dispositive factor for determining whether an alien has been convicted for immigration purposes to be whether he is **guilty of criminal conduct** -- not the type of disposition he received or

whether he is eligible for rehabilitative treatment of some type.

Thus, in the Committee Report Congress states:

> As a result [of ameliorating provisions],
> aliens who have clearly been guilty of criminal
> behavior and whom Congress intended to be
> considered "convicted" have escaped the
> immigration consequences normally attendant
> upon a conviction.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996).  The

Committee Report also states that Congress wanted to stop treatment

"that **prevents the original finding or confession of guilt to be**

**considered a 'conviction' for deportation purposes"** and that

Congress was seeking to **"clarif[y] [its] intent that . . . the**

**original finding or confession of guilt is sufficient to establish**

**a 'conviction' for purposes of the immigration laws."**  Id.

(emphasis added).[4]

    The Committee Report demonstrates a clear and unambiguous

intent on Congress' part to make the type of disposition that

Sandoval-Herrera received a conviction for immigration purposes.

It states that Congress wants to ensure that an alien who are

adjudged guilty but placed on probation -- like Sandoval-Herrera --

cannot escape the immigration consequences of his criminal conduct.

Most importantly, it rejects the policies of leniency,

---

[4]  These latter two statements were made by Congress addressing, by
way of example, "deferred adjudications," or the types of state
dispositions that deferred or withheld judgment upon probation but
then required some further proceeding on guilt or innocence upon a
violation of probation.

rehabilitation, and deference to differing laws that led the Board and the courts to adopt the preexisting state exceptions to the definition of a conviction. Accordingly, the Committee Report -- like the plain language of the statute -- makes clear that Congress intended Sandoval-Herrera to be "convicted" for immigration purposes.

> C.  Congress' intent is clear and unambiguous:  other related provisions of the Act and their legislative history show that Congress has now implemented a tough new immigration policy toward criminal aliens that rejects leniency and rehabilitation in favor of removal.

It is well settled that in determining the meaning of a statute, all related parts of the statute should be construed together.  See, e.g., Sanford v. Commissioner, IRS, 308 U.S. 39 (1939).  Each provision that pertains to the same subject must be construed in pari materia with other sections on the same subject, and this rule has the greatest force where statutes were enacted at the same time.  United States v. Steward, 311 U.S. 60 (1940); Erlenbaugh v. United States, 452 U.S. 967 (1972);  2B Singer, Sutherland Statutory Construction §51.03 at 140 (5th ed. 1992).  Construing §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), in pari materia with other provisions enacted in IIRIRA, it is clear that the Board's construction in the present case reflects a new, tougher policy on Congress' part toward criminal aliens, which does

not want them to be treated leniently.  Section 101(a)(48) of the
Act, 8 U.S.C. §1101(a)(48), was one of several amendments in IIRIRA
that were designed to implement this policy.  In addition to
enacting the section, Congress also enacted a provision that
expands the number of crimes that render an alien deportable for
commission of an "aggravated felony.  See §101(a)(43) of the Act, 8
U.S.C. §1101(a)(43) (Supp. IV 1998).  It created new custody rules
mandating the detention of criminal aliens pending their
proceedings.  See §236(c) of the Act, 8 U.S.C. §1226(c) (Supp. IV
1998).  It withdrew discretionary relief for criminal aliens.  See
§242A of the Act, 8 U.S.C. §1229a (Supp. IV 1998).  And, Congress
eliminated judicial review for several kinds of criminal aliens.
See §242(a)(2)(C) of the Act, 8 U.S.C. §1229(a)(2)(C).

Indeed, the legislative history of the bills that eventually
became IIRIRA are replete with concerns about recidivism.  It was
in this context that Congress enacted IIRIRA in 1996 and the
definition of "conviction" in §101(a)(48) of the Act, 8 U.S.C.
§1101(a)(48).  Congress' concerns about the unacceptably high rate
of recidivism of criminal aliens, and the threat they pose to
public safety shows a clear intent to reach all aliens - like
Sandoval-Herrera - who are guilty of criminal conduct and to not
afford them any leniency, especially by giving effect to
rehabilitative procedures or policies that would permit them to

avoid removal.  Section 101(a)(48) of the Act, 8 U.S.C.
§1101(a)(48), implements that intent.

## II. SANDOVAL-HERRERA HAS BEEN CONVICTED OF AN AGGRAVATED FELONY AND IS INELIGIBLE FOR RELIEF.

Sandoval-Herrera argues that he has not been convicted of an
aggravated felony because his crime was simple possession of a
controlled substance and not a drug trafficking crime.  He bases
his position on the Board's holding in Matter of L-G-, 21 I&N Dec.
89 (BIA 1995) and Matter of K-V-D-, Int. Dec. 3422 (BIA 1999).
Sandoval-Herrera contends that the Fifth Circuit's position in U.S.
v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001), upon which the
Board relied in deciding his case, was dicta and, therefore, not
controlling.  He believes that the Board should have relied on its
prior holding in K-V-D-, in deciding his case.  Sandoval-Herrera
fails to consider that, prior to K-V-D-, the Fifth Circuit held that
a crime that violated the Controlled Substances Act and is a felony
under either state or federal law is an aggravated felony, albeit in
a sentencing guidelines context.  U.S. v. Hinojosa-Lopez, 130 F.3d
691 (5th Cir. 1997).

In Matter of L-G-, the Board held that the federal definition
of "felony" within the meaning of 18 U.S.C. §924(c) (1994) applied
in determining whether a crime was an aggravated felony.  Matter of
L-G- at 94.  Further, the Board found that for immigration
purposes, a state drug crime would qualify as a "drug trafficking

crime" if it were punishable as a felony under the Controlled Substances Act (21 U.S.C. §801, et seq.). Finally, the Board declared its disagreement with the Second Circuit Court of Appeals decision in Jenkins v. INS, 32 F.3d 11 (2d Cir. 1994) (a state conviction for a drug offense which is a felony under state law, but a misdemeanor under federal law is a conviction classified as an aggravated felony) and declined to apply the decision in cases arising outside the Second Circuit.  Matter of L-G- was decided in 1995 - prior to the enactment of IIRIRA.

The term "aggravated felony" was first added to the Act by Sec. 7342 of the Anti-Drug Abuse Act of 1988, Pub. L. 100-690, 102 Stat. 4181.  The term was first defined within the federal sentencing guidelines.  The types of crimes with immigration consequences have expanded over the years to its present definition. §101(a)(43) of the Act, 8 U.S.C. §1101(a)(43).  Included in the definition of "aggravated felony" is "illicit trafficking in a controlled substance (as described in section 102 of the Controlled Substances Act) including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." §101(a)(43)(B) of the Act, 8 U.S.C. §1101(a)(43)(B).

In December 1997, the Fifth Circuit, in addressing the issue for the first time, found that a Texas felony conviction for possession of marijuana to be an "aggravated felony" as that term was defined within the sentencing guidelines.  U.S. v. Hinojosa-

Lopez, 130 F.3d 691 (5th Cir. 1997). The United States Code defines a "drug trafficking crime" as "any felony **punishable** under the Controlled Substances Act (21 U.S.C. §801 et seq.) ... ." 18 U.S.C. 924(c)(2) (emphasis added). The Controlled Substances Act defines a "felony" as "any Federal or **State offense** classified by applicable Federal or State law as a felony." 21 U.S.C. §802(13) (emphasis added). Further, the Controlled Substances Act defines "felony drug offense" as "an **offense** that **is punishable** by imprisonment for more than 1 year under any law of the United States or **of a State** ... ." 21 U.S.C. §802(44) (emphasis added); see generally, U.S. v. Sandle, 123 F.3d 809, 811-812 (5th Cir. 1997) (applying 21 U.S.C. §802(44) to a Texas possession of cocaine offense, for which the individual received deferred adjudication, and finding that a prior Texas state conviction was properly considered a prior felony drug offense sufficient to trigger the enhancement provisions of the federal Sentencing Guidelines).

In interpreting 18 U.S.C. §924(c)(2), the Fifth Circuit in Hinojosa-Lopez found that this provision "defines a 'drug trafficking crime' as 'encompassing two separate elements: (1) that the offense be punishable under the Controlled Substances Act (or one of the other two statutes defined); and (2) that the offense be a felony.'" Hinojosa-Lopez at 694 quoting U.S. v. Restrepo-Aguilar, 74 F.3d 361, 364 (1st Cir. 1996). The Fifth Circuit further explained that "a state drug offense is properly deemed a 'felony'

within the meaning of 18 U.S.C. §924(c) as incorporated by application of note 7 to U.S.S.G. §2L1.2, if the offense is classified as a felony under the law of the relevant state, even if the same offense would be punishable only as a misdemeanor under federal law." Id.

Sandoval-Herrera was convicted under the Texas Controlled Substances Act §481.115 for possession of cocaine. He was charged and convicted for intentionally and knowingly possessing a usable quantity of cocaine in an amount of less than one gram. This offense is a state jail felony. In the State of Texas, a state jail felony, is punishable by a term of imprisonment of not more than two years or less than 180 days. Tex. Penal Code Ann. §12.35 (Vernon 1998). The fact that the imposition of the sentence was suspended and Sandoval-Herrera was received community supervision in lieu of imprisonment is irrelevant. The offense Sandoval-Herrera was convicted of is a **felony** which is **punishable** for a term of more than one year and is a violation of the Controlled Substances Act. Therefore, the definition of "aggravated felony" applies to this case and Sandoval-Herrera has been convicted of a crime classified as an aggravated felony.

In December 1999, the Board ignored the Fifth Circuit holding in Hinojosa-Lopez, finding that the decision defined the term "aggravated felony" in a sentencing guideline context and the Board was free to interpret that term differently in an immigration

context.  Matter of K-V-D-, Int. Dec. 3422 (BIA 1999).  The Board
then went on to hold that a Texas felony conviction for simple
possession of a controlled substance, which is a misdemeanor under
federal law, is not a conviction of an aggravated felony within the
meaning of §101(a)(43)(B) of the Act, 8 U.S.C. §1101(a)(43)(B).
Thus, it affirmed its prior decision in Matter of L-G-.

     The Fifth Circuit revisited the issue of aggravated felony in
May 2001.  U.S. v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001).
First, the Fifth Circuit affirmed its earlier holding in Hinojosa-
Lopez that a state drug conviction is a "drug trafficking crime"
and, therefore, an "aggravated felony" if the offense is punishable
under the Controlled Substances Act and if the offense is a felony
under state law.  The Hernandez-Avalos Court then went on to address
some of the same concerns expressed by Sandoval-Herrera - the lack
of uniform application of the law, both within the Circuit and
throughout the United States.

     Like Hernandez-Avalos, Sandoval-Herrera suggests that it is
fundamentally unfair to apply the strict interpretation of
"aggravated felony" as set out in Hinojosa-Lopez in some cases and
the more lenient Board precedent to other cases.  He contends that
since he was found by the Board of having been convicted of an
aggravated felony, he was not afforded the same opportunities as an
alien whose removal proceedings were conducted at an earlier time
and followed then-existing Board precedent.  The Fifth Circuit

clearly rejected that contention finding no reason "to hold that it is fundamentally unfair to treat Hernandez [or Sandoval-Herrera] as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law." Hernandez-Avalos at 509.

Finally the Fifth Circuit found no validity in interpreting 18 U.S.C. §924(c) "differently based on this distinction between sentencing and immigration cases; it is, after all, the same words of the same phrase from the same statute that is being interpreted in each instance." Id.

> We agree that the plain language of the statutes "indicate[s] that Congress made a deliberate policy decision to include as an 'aggravated felony' a drug crime that is a felony under state law but only a misdemeanor under the [Controlled Substances Act]," [U.S. v.] Briones-Mata, 116 F.3d [308] at 310, and that the lack of a uniform substantive test for determining which drug offenses qualify as "aggravated felonies" "is the consequence of a deliberate policy choice by Congress" that the BIA and the courts cannot disregard. [U.S. v.] Restrepo-Aguilar, 74 F.3d [361] at 366. We are therefore unpersuaded by the BIA's and Second Circuit's approach to interpreting the identical statutory term differently depending upon whether the case involves sentencing or immigration.

Hernandez-Avalos at 510.

Based on the Fifth Circuit's decision in Hernandez-Avalos, the Board recently held that an alien whose adjudication of guilt had been deferred following a plea of guilty to possession of a controlled substance is considered to have been convicted of the

offense for immigration purposes. See Matter of Salazar-Regino, 23 I&N Dec. 223 (BIA 2002). Additionally, the Board held that a conviction for possession of a controlled substance is a conviction of an aggravated felony. Id. at 235. The Board also held that it would not apply the Ninth Circuit's decision in Lujan-Armendariz outside the Ninth Circuit and that Matter of K-V-D-, Int. Dec. 3422 (BIA 1999) would not be applied to cases arising within the Fifth Circuit's jurisdiction. Id.

In a later decision, the Board held that a determination of whether a state drug offense is a "drug trafficking crime", and thus an aggravated felony, will be based on the decisional authority of the federal circuit courts of appeal and not by reference to any legal standard adopted by the Board. Matter of Yanez-Garcia, 23 I&N Dec. 390 (BIA 2002). The Board reexamined its decisions in Matter of K-V-D-, Matter of L-G-, and Matter of Davis, 20 I&N Dec. 536 (BIA 1992). The Board overruled its decision in Matter of K-V-D-, and modified its decisions in Matter of L-G- and Matter of Davis to the extent they are inconsistent with its ruling in Matter of Yanez-Garcia. Matter of Yanez-Garcia at 396.

Sandoval-Herrera's claim that applying the Board's decision in Matter of Roldan and the Fifth Circuit's decision in Hernandez-Avalos to his case deprives him of procedural due process involving "fair notice" is suspect. Sandoval-Herrera's conviction was entered in November 1996, which is after the enactment of IIRIRA. It is absurd to believe that Sandoval-Herrera considered the immigration consequences of his actions prior to engaging in his criminal

activity.    Likewise,  if  Sandoval-Herrera  had  truly  considered  the
immigration  consequences  as  strategy  in  his  criminal  proceedings,  he
would  have  been  alerted  to  the  sweeping  statutory  changes  brought
about  by  IIRIRA  and  would  have  been  cautious  in  relying  on  decisions
rendered  prior  to  its  enactment.

"[T]he  United  States  has  always  been  a  nation  of  immigrants;  it
is  one  of  our  greatest  strengths.    But  aliens  arriving  at  our  shores
must  understand  that  residency  in  the  United  States  is  a  *privilege*,
not  a  *right*.    For  those  aliens  ...  who  engage  in  ...  criminal  acts
during  their  stay  here,  this  country  will  not  offer  its  embrace."
Matter of Jean,  23  I&N  Dec.  373,  384  (A.G.  2002).    Having  no  **right**
to  remain  in  this  country,  Sandoval-Herrera  should  have  been  aware
of  the  possibility  that  his  **privilege**  to  reside  here  legally  was  in
jeopardy  at  the  time  he  was  arrested  for  his  drug  offense.    To
believe  otherwise  is  unconscionable.

Until  the  Board  has  rendered  its  decision,  there  is  no
administratively  final  decision.    As  an  ongoing  application,  the
alien  runs  the  risk  that,  during  the  pendency  of  the  appeal,  the  law
may  change,  perhaps  in  an  unfavorable  way.    The  law  in  this  area  is
always  evolving  and  what  may  be  the  law  today  may  not  be  the  law
tomorrow.    A  case  decided  according  to  Board  precedent  yesterday  may
be  decided  differently  today  based  on  changes  in  the  law,  either
statutorily  or  through  court  decisions.    Sandoval-Herrera  has  been
convicted  of  an  offense  defined  by  the  Controlled  Substances  Act.

The crime for which he was convicted - possession of cocaine in an amount of less than one gram - is a felony in the State of Texas. In the Fifth Circuit, this amounts to a "drug trafficking crime" and, therefore, an aggravated felony.

### III. THE RULING ON THE NINTH CIRCUIT COURT IN LUJAN-ARMENDARIZ v. INS SHOULD NOT BE APPLIED IN THIS CASE AS IT HAS NO EFFECT ON SANDOVAL-HERRERA'S CONVICTION.

In Lujan-Armandariz v INS, 222 F.3d 728 (9th Cir. 2000), the Ninth Circuit consolidated the cases of Mauro Roldan-Santoyo[5] and Lujan-Armendariz to determine whether the definition of "conviction" enacted in §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A), repealed the Federal First Time Offender Act[6], and whether such treatment should be extended to the FFOA's state counterparts. The first-time drug possession convictions of Roldan and Lujan had been set aside pursuant to state rehabilitative statutes. Finding that their convictions satisfied the

---

[5]  Roldan's appeal to the Board resulted in Matter of Roldan, Int. Dec. 3377 (BIA 1999).

[6]  The FFOA applies to first-time federal drug offenders guilty of simple possession, who have the charges against them dismissed after they plead guilty and serve their term of probation.  The FFOA provides that after such a charge is dismissed, it "shall not be considered a conviction for the purpose of disqualification or disability imposed by law upon conviction of a crime, or for any purpose."  18 U.S.C. §3607(b).  Further, the person shall be restored, "in the contemplation of the law to the status he

requirements of the FFOA, the Ninth Circuit concluded that the

convictions of Roldan and Lujan were not "convictions" for

immigration purposes and they rejected the interpretation of

§101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A) adopted by the

Board in Matter of Roldan, Int. Dec. 3377.

In reaching this conclusion, the Ninth Circuit decided that

the Board had, in effect, wrongly construed the definition of

"conviction" to be an implied repealer of the FFOA, when it was in

fact a "minor exception" to that definition.  Id. at 744-45.  The

panel then concluded that since the FFOA was an exception to the

definition of "conviction," it would offend equal protection under

the rule established by it in Garberding v. INS, 30 F.3d 1187 (9th

Cir. 1994) not to extend FFOA treatment to comparable state

offenders like Lujan and Roldan.  Accordingly, the panel held Lujan

and Roldan could not be treated as having a "conviction" for

immigration purposes.  Lujan, 222 F.3d at 744-45, 749.[7]

The Ninth Circuit's decision in Lujan conflicts with the plain

language of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), which,

as shown and found by the Fifth Circuit in Moosa v. INS, 171 F.3d

at 1005, is clear and unambiguous and permits no exceptions for

---

occupied before such arrest or institution of criminal
proceedings."  Id., §3607(c).

[7]  It bears mentioning that in Garberding, the Ninth Circuit held
that the FFOA need only be given effect to aliens who received
lenient treatment under state programs.  Here, because Congress has

rehabilitative state statutes. It should be noted that even the Lujan majority noted that its decision did not effect that the conviction definition has on state expungements under state rehabilitation laws in general. Lujan, 222 F.3d at 742.

The analysis applied by the panel in Lujan reached the issue of whether the conviction definition repeals the First Offender Act in whole or in part. The Court concluded that it does not and that the FFOA trumps the clear language of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48). Lujan, 222 F.3d at 742. However, the conclusion is contrary to the longstanding rule of statutory construction that a general statute will not govern if a specific statute covers the case. Resolution Trust Corp v Seale, 13 F.3d 850, 854 (5th Cir. 1994) citing Green v Bock Laundry Mach. Co., 490 U.S. 504, 524 (1989); Morton v Mancari, 417 U.S. 535, 550-551 (1974). Applying these principles sub judice, §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A), which specifically deals with the effects of rehabilitative expungements for immigration purposes, takes precedence over the FFOA.

To the extent that it has addressed the issue, the Fifth Circuit has agreed with the Board in finding that the definition of "conviction" encompasses Texas deferred adjudications. See Moosa v INS, 171 F.3d 994, 1005 (holding that Texas deferred adjudication

---

expressly barred the use of deferred adjudication, Sandoval-Herrera' treatment should not be given effect.

was a "conviction" for purposes of determining an alien's eligibility for permanent residency pursuant to § 245A of the Act, 8 U.S.C. §1255a); Garnica-Vasquez v Reno, 210 F.3d 558 (5th Cir. 2000)(a habeas case of a petitioner with a deferred adjudication of guilty for indecency with a child in which the Court cited Moosa and noted that a deferred adjudication is a conviction for immigration purposes).

Additionally, two other courts of appeals have construed §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) differently than the Lujan majority as to the clarity and meaning of the statute's language as applied to rehabilitative expungements. See Herrera-Inirio v INS, 208 F.3d 299 (1st Cir. 2000)(holding expunged crime of domestic violence is still a conviction for immigration purposes); Griffiths v INS, 243 F.3d 45 (1st Cir. 2001)(First Circuit defers to Board's interpretation of "conviction" where petitioner was subject to a "guilty filed" disposition as a result of a firearm violation under Massachusetts law) United States v Campbell, 167 F.3d 94 (2d Cir. 1999)(Texas drug conviction vacated upon completion of probation is a "conviction" within the meaning of new statute as incorporated by federal sentencing guidelines).

As argued, §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), makes "guilt" the dispositive factor in whether there is a "conviction" for immigration purposes - not what type of rehabilitative treatment a criminal received, and Congress intended

to prevent aliens who were clearly guilty of criminal conduct from using a variety of rehabilitative procedures to escape the immigration consequences of their crimes.

Finally, the court in Lujan misunderstands the prior extension of federal first offender treatment to state offenders. In Carr v. INS, 86 F.3d 949, 951-52 (9th Cir, 1996), affirming that this extension had no effect for state firearms offenders, the Ninth Circuit repeatedly described the agency's extension of FFOA treatment to state offenders as a "policy," "practice," or "approach".  In addition, in Paredes-Urrestarazu v. INS, 36 F.3d 801, 814-15 (9th Cir. 1994), the Ninth Circuit also repeatedly described the agency's extension of FFOA treatment to state offenders as a "policy" or "a long-standing practice." Accordingly, the Ninth Circuit has clearly acknowledged that the extension of FFOA treatment derived out of Board policy and not a constitutional mandate.

Given that the extension of FFOA treatment resulted of Board policy, it is well-established that the Board may elect to proceed upon a different course.  Rust v. Sullivan, 500 U.S. 173, 186-87 (1991) ("An agency is not required to 'establish rules of conduct to last forever'").  As the Supreme Court has acknowledged:

> The fact that the agency has from time to time
> changed its interpretation of the term . . .
> does not . . . lead us to conclude that no
> deference should be accorded the agency's
> interpretation of the statute. . . .  On the

> contrary, the agency, . . . must consider
> varying interpretations and the wisdom of its
> policy on a continuing basis.

Chevron, 467 U.S. at 863-64.  An agency need only justify its

decision to change policy by providing a "reasoned analysis."

Motor Vehicle Manufacturers Association v. State Farm Mutual

Automobile Insurance, 463 U.S. 29, 42 (1983); Davila-Bardales v.

INS, 27 F.3d 1, 5(1st Cir. 1994).

With the Board was free to reconsider the wisdom of its

interpretation on a continuing basis, the Board was justified in

taking occasion to re-evaluate its policy regarding state

expungements of convictions for at least two reasons.  First,

Congress, in enacting §101(a)(48) of the Act, 8 U.S.C.

§1101(a)(48), provided a uniform definition of a "conviction" - a

definition which had previously been provided only by the Board's

interpretation.  Second, it was appropriate for the Board to

interpret the definition of a "conviction" and its policy regarding

expungements in light of the decisions of the Fifth Circuit

regarding the role of equal protection in the expungement context.

As such, this Court should follow the Board and find that under

§101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), Sandoval-Herrera

stands convicted for immigration purposes.  The plain language of

the statute provides that Sandoval-Herrera is removable by reason

of having committed criminal offense covered by §237(a)(2)(B)(i) of

the Act, 8 U.S.C. §1227(a)(2)(B)(i).

Sandoval-Herrera's position that just because the Ninth Circuit reached a result that was favorable to the aliens in <u>Lujan-Armendariz</u>, he should be afforded the same consideration regardless of the fact that he falls within the jurisdiction of the Fifth Circuit is also unreasonable.  Such a broad statement has been rejected by both the Eleventh Circuit Court of Appeals ("Eleventh Circuit") and the Eighth Circuit Court of Appeals ("Eighth Circuit").  <u>Fernandez-Bernal v. Attorney General</u>, 257 F.3d 1304 (11th Cir. 2001); <u>Vasquez-Velezmoro v. INS</u>, 281 F.3d 693 (8th Cir. 2002).

The Eleventh Circuit in <u>Fernandez-Bernal</u> found that it was not a violation of equal protection to treat an alien convicted under a state rehabilitative statute differently than an alien convicted under FFOA if the term of probation was different.  "[T]reating aliens differently based on the nature of the sentence they receive" does not violate equal protection.  <u>Fernandez-Bernal</u> at 1317.  "[N]othing requires that aliens whose sentences would not have been expunged under the FFOA be given better treatment under immigration laws merely because they received their sentences and expungements under state law."  <u>Id</u>. at 1317, n.12.

Echoing the Eleventh Circuit's findings, the Eighth Circuit found that although a state defendant and a defendant under FFOA may be "similarly situated (in that the intent of the judge was to provide them with the opportunity to have their convictions

expunged), we still see a rational basis for treating differently state and federal convictions that are expunged." Vasquez-Velezmoro at 698. "There are conceivable states of facts to explain treating differently aliens with state expunged convictions and aliens with FFOA expunged convictions." Id.

The term of Sandoval-Herrera's original sentence was two years, imposition of which was suspended and he was placed on probation for five years - significantly longer than the one-year-or-less sentence of probation that defendants need to be eligible for FFOA relief. Since Sandoval-Herrera's sentence is different, treating him differently here is not arbitrary or unreasonable.

## CONCLUSION

Sandoval-Herrera has been "convicted" of a criminal offense as that term is defined by the Act and interpreted by the Board and the Fifth Circuit. Additionally, Sandoval-Herrera has been convicted of an "aggravated felony" as that term is defined by the

Act and interpreted by the Fifth Circuit.  For the foregoing

reasons, the Court should dismiss the petition for review.


Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel:  (956) 389-7051
Georgia Bar No. 590315
Federal Bar No. 23937

September __11__, 2002

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Respondents' Return and Motion to Dismiss the Petition for Writ of Habeas Corpus was mailed via first class mail, postage prepaid to:

Lisa Brodyaga, Esquire
Refugio Del Rio Grande
17891 Landrum Park Rd.
San Benito, TX 78586

on this 11th day of September, 2002.


LISA M. PUTNAM
Special Assistant United States Attorney



OPTIONAL FORM 155A (Rev. 6-85)
DEPT. OF STATE

NSN 7540-01-126-7761

50155-203

**IV-41640086**

# IMMIGRANT VISA AND ALIEN REGISTRATION

☐ THE IMMIGRANT HAS BEEN PREVIOUSLY IN THE UNITED STATES

**OF:** *(Family Name)* SANDOVAL HERRERA, *(First Name)* MANUEL *(Middle Name)*

INS FILE #, IF KNOWN

ACTION BY IMMIGRATION INSPECTOR

THE IMMIGRANT NAMED ABOVE ARRIVED IN THE UNITED STATES VIA *(Name of vessel or flight no. of arrival)*

G/W

U. S. IMMIGRATION
401 BRO 58

JUL 25 1988

ADMITTED IR-1 (CLASS)

UNTIL _____

INELIGIBILITY FOR VISA WAIVED UNDER SECTION
☐ 212(e) ☐ 212(h)
☒ 212(g) ☐ 212(i)

CITY AND COUNTRY OF BIRTH
SAN PEDRO COAH, MEXICO

MO-DAY-YR OF BIRTH
21MAR50

CITY AND COUNTRY OF LAST RESIDENCE
MATAMOROS TAMPS, MEX

NATIONALITY
MEXICAN

MARITAL STATUS
☒ M ☐ S ☐ W ☐ D ☐ SEP

MOTHER'S FIRST NAME
GUADALUPE

FATHER'S FIRST NAME
MERCED

FINAL ADDRESS IN THE UNITED STATES

STREET ADDRESS, INCLUDE—IN CARE OF & APT# IF APPLICABLE
34 IMPERIAL

CITY, STATE, AND ZIP CODE, IF AVAILABLE
BROWNSVILLE, TX 78520

SEC. 212(a)(14)
LABOR CERTIFICATION ☐ NOT APPLICABLE ☒ NOT REQUIRED ☐ ATTACHED

OCCUPATION
LAB-CONSTRUCTION

SEX ☒ M ☐

This visa is issued under Section 221 of the Immigration and Nationality Act, and upon the basis of the facts stated in the application. Possession of a visa does not entitle the bearer to enter the United States if at the time he seeks to enter he is found to be inadmissible. Upon arrival in the United States, it must be surrendered to a United States Immigration Officer.

## IMMIGRANT CLASSIFICATION

AMERICAN CONSULATE GENERAL

AT MONTERREY, N.L., MEXICO

Consular Officer of the United States of America

Tariff No. 21
Fee Paid $75
Local Cy. Equiv.

CLASSIFICATION SYMBOL
IR1

FOREIGN STATE/OTHER AREA LIMITATION
MEXICO

IMMIGRANT VISA NO.
MTR8612703401 41640086

ISSUED ON *(Day)* 20JUL88 *(Month)* *(Year)*

THE VALIDITY OF THIS VISA EXPIRES MIDNIGHT AT THE END OF
*(Day)* 16NOV88 *(Month)* *(Year)*

## PASSPORT

NO.
B NLE-21468

OR OTHER TRAVEL DOCUMENTS (Describe)

ISSUED TO

BY DGS

ON

EXPIRES **IV- 41640086**

ACTION OF J.J.

ACTION ON APPEAL

U.S.P.H.S.

Class A or Class B (T)
requires attention of
USPHS at poe

*U.S. GOVERNMENT PRINTING OFFICE: 1986-152-562



CAUSE NO. 96-CR-972-D

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | IN THE DISTRICT COURT OF |
| VS | * | CAMERON COUNTY, TEXAS |
| MANUEL SANDOVAL | * | 103RD DISTRICT COURT |

JUDGMENT OF CONVICTION
STATE JAIL FELONY SENTENCE SUSPENDED;
PLACEMENT ON COMMUNITY SUPERVISION

Judge Presiding: Hon. Patricia R. Lykos Date of Judgment: 11/  /96

State's                         Defendant's
Attorney: Hon. Jody Young       Attorney:  Hon. Noe Robles

Offense Convicted of: Possession of Controlled Substance

Date of Conviction: 11/07/96      Date offense Committed: 06/22/96

Degree of Offense: State Jail Felony Charging Instrument:Indictment

Plea to Court: Guilty          Verdict of Court: Guilty

Term of Plea Agreement (In Detail): Cold Plea.

Plea to Enhancement: n/a        Findings on Enhancement: n/a

Findings on Special Issue (In Detail): n/a

Date Sentence Suspended: 11/07/96        Costs: $124.50

Sentence of Confinement
(State Jail): 2 years                Fine: $1,000.00

Period of Supervision: 5 years        Date to Commence: 11/07/96

THIS SENTENCE TO BE SERVED CONCURRENT WITH ANY OTHER SENTENCE
UNLESS OTHERWISE SPECIFIED.

On the date stated above, the above numbered and entitled
cause was reached and called for trial, and the State appeared by
the attorney stated above, and the Defendant and the Defendant's
attorney were also present. Thereupon, both sides announced ready
for trial, and the Defendant, Defendant's attorney, and the State's
attorney agreed in open court and in writing to waive a jury trial
of this cause and to submit it to the Court. The Court consented
to the waiver of a jury herein. The Defendant further waived the
reading of the indictment and upon being asked by the Court as to
how the Defendant pleaded, entered a plea of guilty to POSSESSION
OF CONTROLLED SUBSTANCE. Thereupon, the Defendant was admonished
by the Court of the consequences of said plea, and, it appearing to
the Court that the Defendant was competent to stand trial and that
the Defendant was not influenced in making said plea by any
consideration of fear or by any persuasion prompting a confession
of guilt, the free and voluntary plea of guilty was received by the
Court and is now entered of record in the minutes of the Court as
the plea of the Defendant. The Court, having heard all evidence
from the State and the Defendant, and having heard argument of
counsel for both parties, found that there was sufficient evidence
to support the Defendant's plea and found the Defendant guilty of
the offense stated above.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the Defendant is guilty of the offense stated above, and, the Court having reviewed the pre-sentence investigation report, the punishment is assessed by the Court at TWO (2) Years at a State Jail Facility, and the State of Texas do have and recover of said Defendant all court costs in this prosecution expended for which execution will issue.

However, the Court, pursuant to TEX. CODE CRIM. PRO. Art. 42.12, 15, suspends the imposition of the sentence in this cause and the Defendant is placed on community supervision under the direction of this Court.

IT IS, THEREFORE, ORDERED by the Court that the imposition of the sentence of confinement of TWO (2) YEARS at a State Jail Facility, in this cause is hereby suspended, and the Defendant is placed on community supervision for FIVE (5) YEARS, subject to the conditions of supervision imposed by the Court and served on the Defendant.

(a)  Commit no offense against the laws of this State or any other State or of the United States;

(b)  Avoid injurious or vicious habits;

(c)  Avoid persons or places of disreputable or harmful character;

(d)  Report to the Probation Officer at the Probation Office monthly between the second Monday and the following Friday of each month;

(e)  Report to the Probation Officer (in addition to the reporting) required by (d) above) when, where and in the manner as may hereafter be ordered by the Court through the Probation Officer;

(f)  Permit the Probation Officer to visit Probationer's home, work, or elsewhere at any and all times;

(g)  Work faithfully at suitable employment as far as possible;

(h)  Remain in Cameron County, Texas, unless Probationer shall have first secured the written consent of the Court to leave the county and filed it in the papers of this cause;

(i)  Pay fine in the amount of $1,000.00 within 5 years after the date of entry of this Judgment;

(j)  Pay court costs in the sum of $124.50 within 6 months after the date of entry of this Judgment;

(k)  Pay a community supervision fee of $40.00 per month every month of the supervision period between the first and tenth day of the month beginning in the month next following entry of this Judgment until the sum of $2,400.00 shall have been paid;

(l)  Pay the Community Supervision and Corrections Department $200.00 reimbursement for Pre-Sentence Investigation conducted, payable at $10.00 per month from the date of this Judgment;

(m)  Submit to drug/alcohol abuse counseling and classes as directed by the Community Supervision and Corrections Department;

(n)  Perform 250 hours of community service at 5 hours per week beginning in the month next following entry of this Judgment;

(o)  Enroll in English classes

(p)  Submit to random urine analysis by authorized personnel for the Community Supervision and Corrections Department reveal to said authorized personnel proof of any medications legally prescribed prior to submitting specimen.  A urine specimen positive for any controlled substances, dangerous drugs, or marihuana, not legally prescribed for you, may result in an adjudication of a deferred adjudication supervision or revocation of a post conviction supervision.

(q)  File with the Supervision Officer at the Community Supervision and Corrections Department between the first and tenth day of every month next following a default in any payment required of the defendant by this Judgment a detailed statement in writing under oath of all income and expenses received and expended by the defendant during the entire month in which the default occurred;

(r)  File with the Supervision Officer at the Community Supervision and Corrections Department between the first and tenth day of every month next following a calendar month in which defendant was gainfully employed less than 150 hours a detailed statement in writing under oath of all efforts made by defendant to secure and hold employment during the entire month in which not gainfully employed 150 hours.

(s)  Within ten (10) days after the event, report in writing to the Supervision Officer any arrest of defendant and/or criminal charge filed against defendant.

By the term "the Supervision Officer" as used herein is meant any Cameron County Supervision Officer; by the term "Community Supervision and Corrections Department" is meant the Cameron County Community Supervision and Corrections Department, First Floor, Cameron County Courthouse, Brownsville, Texas.

All payment required of the defendant by this Judgment shall be paid within the time specified at the Community Supervision and Corrections Department to the Supervision Officer for which defendant shall receive the Supervision Officer's sequentially numbered receipt evidencing payment.

All payments received under this Judgment shall be forthwith deposited by the Supervision Officer in the Cameron County Community Supervision and Corrections Department Trust Fund (previously referred to as the Cameron County Adult Probation Trust Fund) in the County Depository and thereafter disbursed in accordance with the District Courts' Order of March 21, 1975, recorded in Volume 63, Page 284-A, of the Minutes of this Court. Under the authority of that Order and this Judgment, disbursement shall be made without further order of the Court:

1.  to the District Clerk of Cameron County, Texas for court costs in the amount of $124.50

such disbursement to be made upon full collection of the amounts above specified or periodically on a pro rata basis.  All other payments made under this Judgment shall wait further written order of the Court as per the District Courts' Order of March 21, 1975.

This Court reserves the rights vested in it by law to control by its further orders, the modification and termination of the provisions of the community supervision hereinabove set out, its jurisdiction being thereby expressly reserved until the satisfactory fulfillment of the conditions of said community supervision.

IT IS FURTHER ORDERED by the Court that Defendant's left or right thumb be fingerprinted, and that said thumbprint be marked as Exhibit "A" and is made a part hereof for all purposes.

SIGNED FOR ENTRY:  NOVEMBER _22_, 1996.

_____
JUDGE PRESIDING

4:00

NOV 2 2

Connie L. Warford

POSSESSION OF CONTR'    'D SUBSTANCE (MINIMUM AMC    'TS)    #116
DOB: G. SANDOVAL 6/25/52    M. SANDOVAL 3/21/50

# IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

THE GRAND JURORS, for the County of Cameron, State aforesaid, duly organized as such at the JANUARY

Term, A. D. 19 96 , of the _____197TH_ JUDICIAL DISTRICT_____    in and for

said County, upon their oaths in said Court, present that    **GUILLERMINA SANDOVAL**
**AND MANUEL SANDOVAL**

hereinafter called Defendants,

on or about the    **22ND**    ,day of    **JUNE**    A. D One Thousand Nine

Hundred and    **NINETY-SIX**    and anterior to the presentment of this indictment, in the County of

Cameron and State of Texas, did then and there unlawfully  intentionally    and    knowingly

possess  a  controlled  substance,  to  wit,  cocaine,  in  an  amount  by

aggregate  weight,  including  any  adulterants  and  dilutants,  of  less  than

1 gram,

against the peace and dignity of the State.

_____
Foreman of the Grand Jury

96-CR-  972-D

THE STATE OF TEXAS
COUNTY OF CAMERON

I, AURORA DE LA GARZA, Clerk of the District Courts of Cameron County, Texas, do hereby certify that the within and fore-going is a true and correct copy of the Original Bill of Indictment, filed in said Court on _____

_____A. D. 19_____ in Cause No._____, styled the State of Texas vs.

_____

_____

_____

Given under my hand and seal of said court, at office in Brownsville, Texas, this_____day

of_____A. D. 19_____.

AURORA DE LA GARZA          , Clerk

By_____Deputy

---

96-CR- 972 -D

THE STATE OF TEXAS

GUILLERMINA SANDOVAL AND
MANUEL SANDOVAL

vs.

INDICTMENT

OFFENSE:

POSSESSION OF CONTROLLED
SUBSTANCE

LUIS V. SAENZ
Criminal County Attorney

A TRUE BILL.

_____
Foreman of Grand Jury

Filed on  JUL 24 1996  19___

AURORA DE LA GARZA, CLERK OF
DISTRICT COURTS OF CAMERON
COUNTY, TEXAS

By_____ Deputy

Amount of Bail $ 5,000.00

NAMES OF WITNESSES

INE G. SANDOVAL 90578

M. SANDOVAL 90579

# REPORTED CRIMINAL DOCKET

Case No. 96-CR-972-D
ID#90579

| NAMES OF PARTIES | ATTORNEYS | OFFENSE | | DATE OF FILING | | |
|---|---|---|---|---|---|---|
| | | | | MONTH | DAY | YEAR |
| THE STATE OF TEXAS VS. MANUEL SANDOVAL | DISTRICT ATTORNEY, CAMERON COUNTY | POSSESSION OF CONTRO-LLED SUBSTANCE | 12 | 7 | 24 | 96 |
| DOB:3/21/50 | Noe Robles (E) | | | | | |

DEC  1996

| DATE OF ORDERS | | | ORDERS OF COURT | PAPERS FILED |
|---|---|---|---|---|
| MONTH | DAY | YEAR | | |
| 7 | 24 | 96 | TRANSFERRED FROM THE 107TH DISTRICT COURT. DHESTER/CH | 7/24/96 ORDER TRANSFERRING CAUSE |
| 8 | 20 | 96 | ARRAIGNMENT SET FOR AUGUST 29, 1996, AT 8:30 A.M.. MMURRAY/CH | 8/20/96 NOTICE OF ARRAIGNMENT |
| 08 | 29 | 96 | Defendant arraigned plea of not guilty entered; trial set for 09/16/96 at 9:00 a.m., with ann. 09/16/96 at 9:00 a.m..MM/ls | 8/23/96 CAPIAS & PRECEPT ISSUED SERVED: 8-24-96 FILED: 8-27-96 8/29/96: ARRAIGNMENT |
| 9 | 16 | 96 | Per agreement Case reset to Monday 10/07/96 at 9:00am. R.Ornelas/ll | 9/13/96 Motion to Suppress Illegally Seized Evidence 9/13/96 Motion for Discovery and Inspection of Evidence 9/13/96 Motion for Continuance 9/19/96 Motion to Disclose Identity of Informant |
| 10 | 07 | 96 | Written waiver and consent to stipulation of testimony, waiver of jury and plea of guilty, signed for entry. K.Baker/sar Both parties present and ready. Defendant entered his plea of guilty. Court defers finding of guilt pending PSI. Punishment set for 11/07/96 @9:00 am. K.Baker/sar | 10/29/96 PSI |
| 11 | 7 | 96 | Alford in ... of UIS. Or ... Punishment left ... of ... | |
| 11 | 22 | 07 | JUDGMENT OF CONVICTION; STATE JAIL FELONY SENTENCE SUSPENDED; PLACEMENT ON COMMUNITY SUPERVISION SIGNED FOR ENTRY. MMURRAY/JR/CM | PROBATION GRANTED DATE: 11-07-96 |

VOL. CR. _____  PAGE _____

No. _____

The State of Texas

vs. _____

| DATE OF ORDERS | | | ORDERS OF COURT | PAPERS FILED |
|---|---|---|---|---|
| MONTH | DAY | YEAR | | |

CERTIFIED COPY OF PROBATION JUDGMENT DELIVERED TO DEFENDANT ON __/__/__

VOL        PAGE



U.S. Department of Justice
Immigration and Naturalization Service

**Notice to Appear**

**In removal proceedings under section 240 of the Immigration and Nationality Act**

File No:  A41 640 086

In the Matter of:

Respondent:  SALDOVAL-Herrera, Manuel                                    tly residing at:
PISPC, RT.3 BOX 341, LOS FRESNOS, TX   Dallas County Jail
(Number, street, cit)                                        133 N. Industrial Blvd        a code and phone
                                                             Dallas, TX  75207            number)

☐ 1.  You are an arriving alien.
☐ 2.  You are an alien present in the United States who has not been admitted or paroled.
☒ 3.  You have been admitted to the United Sates, but are deportable for the reasons stated below.

The Service alleges that you:
**SEE ATTACHED**

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision (s) of law:
**SEE ATTACHED**

3

☐  This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐  Section 235(b)(1) order was vacated pursuant to:   ☐ 8 CFR 208.30(f)(2)   ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:  _____
PISPC, RT. 341, LOS FRESNOS, Texas 78566
                                    (Complete Address of Immigration Court, Including Room Number, if any)
on    **TO BE SET**    at    **TO BE SET**    to show why you should not be removed from the United States based on the
         (Date)              (Time)
charge(s) set forth above.

Date:  July 14, 1997                       Harlingen, Texas
                                           (Signature and Title of Issuing Officer)
                                           (City and State)

**See reverse for important information**

Form I-862 (Rev. 4-1-97)

## Notice to Respondent

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so chose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at not cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have the right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide and address at which you may be reached during proceedings then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

_____
(Signature of Respondent)

Before: _____

Date: _____

_____
(Signature and Title of INS Officer)

---

### Certificate of Service

This Notice to Appear was served on the respondent by me on ___07|14|97___ , in the following manner and in
                                                                (date)
compliance with section 239(a)(1)(F) of the Act:

☑ in person        ☐ by certified mail, return receipt requested        ☐ by regular mail

☑ Attached is a list of organizations and attorneys which provide free legal services.

☐ The alien was provided oral notice in the ___Spanish___ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

MANUEL SANDOVAL
_____          _____
(Signature of Respondent if Personally Served)          (Signature and Title of Officer)

Form I-862(Rev 4-1-97)

**U.S. Department of Justice**
Immigration and Naturalization Service

Continuation Page for Form:  I-862

| Alien's Name | File Number | Date |
|---|---|---|
| SANDOVAL-Herrera, Manuel | A41 640 086 | July 14, 1997 |

**Allegations:**

1. You are not a citizen or national of the United States;

2. You are a native of Mexico and a citizen of Mexico;

3. You were admitted to the United States at Brownsville, Texas on or about 07/25/88 as an immigrant;

4. You were, on **11/07/96**, convicted in the 103rd District Court at Cameron County, Texas for the offense of Possession of a controlled Substance, in violation of Texas Penal Code. *to wit cocaine.  amended 9/23/97*

**Charges:**

Section 237(a)(2)(B)(i) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relation to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

| Signature | Title |
|---|---|
| Mark M. Dunlap | Special Agent |

Form I-831 Continuation Page  (Rev. 6/12/92)                    Page 1 of 1 Page(s)



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Harlingen, Texas

File No.: A 41 640 086                    Date:  January 15, 1999

In the Matter of                )
                                )
MANUEL SANDOVAL HERRERA          )        IN REMOVAL PROCEEDINGS
                                )
          Respondent            )

CHARGES:        Section 237(a)(2)(B)(i) Immigration and
                Nationality Act

APPLICATION:    Termination of Proceedings, Cancellation of
                Removal, Section 240(A)(a) Immigration and
                Nationality Act

ON BEHALF OF RESPONDENT:              ON BEHALF OF SERVICE:

Thelma O. Garcia, Esquire             Lisa Putnam, Esquire
                                      Assistant District Counsel

ORAL DECISION OF THE IMMIGRATION JUDGE

        The Immigration Service issued a Notice to Appear with

respect to respondent on July 14, 1997, and properly served it

upon him (Exhibit 1).  The Notice to Appear alleges that

respondent is not a citizen or national of the United States and

that he is a native and citizen of Mexico who was admitted to the

United States at Brownsville, Texas, on or about July 25, 1988,

as an immigrant.  It is further alleged that on November 7, 1996,

respondent was convicted in the 103rd District Court in Cameron

County, Texas, for the offense of possession of a controlled

substance, to wit, cocaine in violation of Texas law.  The Notice

to Appear charges that respondent is subject to removal from the

lwm

United States under Section 237(a)(2)(B)(i) of the Immigration and Nationality Act (the Act).

Initially the respondent appeared pro se and pled to the allegations and the charge in the Notice to Appear.  He admitted all four allegations of fact and conceded removability as charged.  Thereafter, the respondent was represented by Counsel of Record Thelma O. Garcia.  At a hearing held on May 13, 1998, respondent's counsel confirmed respondent's admissions to the four allegations of fact in the Notice to Appear.  Ms. Garcia request to withdraw the concession of removability to argue that respondent is not removable pursuant to the Board of Immigration Appeals decision in <u>Matter of Manrique</u>, Int. Dec. 3250 (BIA 1995).  The Service did not oppose the request to withdraw the concession of removability and the Court granted that request.  Based upon the respondent's pleadings the Court finds that allegations 1 through 4 in the Notice to Appear are established as true.  There has been no evidence presented or even any contention that respondent appeal on direct appeal the conviction alleged in allegation number 4 in the Notice to Appear.  Further the record contains the record of conviction (Exhibit 2), with respect to the offense alleged in the Notice to Appear.  The indictment shows that it was charged that respondent on June 22, 1996, unlawfully, intentionally, and knowingly possessed a controlled substance, cocaine, in an amount of less than one gram.  The judgment of conviction shows that respondent pled

A 41 640 086                   2              January 15, 1999

lwm

guilty to the charge in the indictment. The Court adjudged
respondent to be guilty of that offense and he was sentenced to
serve two years at a State jail facility, however the Court
suspended the imposition of that sentence and placed the
respondent on community supervision for five years. It is noted
that the record also contains a police report from the
Brownsville Police Department, the Court is not taking that
document into consideration with respect to the issues of
removability because it is not part of the record of conviction.

Respondent has filed an affidavit with the Court which
the Court has considered. It is attached with his motion to
terminate removal proceedings based on Matter of Manrique, supra.
In the affidavit the respondent states he was convicted on
November 7, 1996, for possession of a controlled substance and
that that offense is his first and only offense. He states in
the affidavit that he pled guilty to that offense. He also
states that he has never been accorded first offender treatment
under any law. He states that upon completion of his five-year
probation these proceedings will be dismissed. That affidavit
was signed on August 5, 1998.

In Matter of Manrique, supra, the Board of Immigration
Appeals held that an alien who has committed a controlled
substance offense and was prosecuted under State law is not
deportable, if the individual meets the four-part test set in out
of Matter of Manrique, at slip opinion page 12. The Board

A 41 640 086                    3                    January 15, 1999

lwm

stated,

"Therefore the policy of leniency in
immigration proceedings shown to alien
subject to treatment under 18 U. S. Code,
Section 3607A (1988) will be extended to
aliens prosecuted under State law who
establish the follow criteria:  (1) the alien
is a first offender, i.e., he has not
previously been convicted of violating any
Federal or State law relating to controlled
substances, (2) the alien has pled to or been
found guilty of the events of simple
possession of a controlled substance, (3) the
alien has not previously been accorded first
offender treatment under any law, (4) the
Court has entered an order pursuant to a
State rehabilitative statute under which the
alien's criminal proceedings have been
deferred pending successful completion of
probation or the proceedings have been or
will be dismissed after probation."

The Court concludes that Matter of Manrique, remains good law,

see Matter of Dillingham, Int. Dec. 3325 (BIA 1997).  In Matter

of Dillingham, the Board stated,

"We recognized that Garberding v. INS, supra,

A 41 640 086                4               January 15, 1999

lwm

> and <u>Matter of Manrique</u>, <u>supra</u>, have carved
> out a new exception for aliens who have been
> convicted of a controlled substance violation
> and accorded rehabilitative treatment under a
> State statute and who would have been
> eligible for first-offender treatment."

The Board went on to state in the <u>Matter of Dillingham</u>, that, "we will also take a narrow view of this new exception and limit it's application to aliens meeting the strict four-part test outlined in <u>Matter of Manrique</u>."

In the present case, the Court concludes that the respondent has not met the requirement in Part 4 of the <u>Manrique</u> test. The Court does find that the respondent's placement on community supervision is pursuant to a State rehabilitative statute, however respondent's criminal proceedings have not been deferred pending successful completion of probation, rather respondent was adjudged guilty of the offense of possession of cocaine and he was sentenced to confinement for a period of two years. However the imposition of the two-year sentence was suspended and respondent was placed on five years of community supervision. Further there has been no showing that respondent's criminal proceeding has been or will be dismissed after probation, even if he successfully completes the probationary period. Whether the criminal proceeding will be dismissed, if respondent successfully completes probation is a question of

A 41 640 086                  5                  January 15, 1999

lwm

State law.  Article 42.12, Section 20 of the Texas Code of
Criminal Procedure speaks to the termination of community
supervision and the potential for dismissal of the criminal
proceeding after community supervision has been completed.
However, at Paragraph B of Section 20, it states that this
section does not apply to a defendant convicted of an offense
punishable as a State jail felony.  The judgment of conviction in
respondent's criminal case states that his offense was a State
jail felony.  Article 42.12, Section 15 of the Texas Code of
Criminal Procedure speaks to procedures relating to State jail
felony community supervision.  However, nowhere in that section
does it speak to a criminal proceeding being dismissed after the
completion of community supervision.  Article 42.12 of the Texas
Code of Criminal Procedure is a lengthy provision dealing with
the questions involved regarding community supervision in the
State of Texas.  The Court has reviewed that entire provision.
The Court has not found any provision in Article 42.12 which
speaks to the dismissal of a criminal proceeding after the
completion of community supervision where the offense was a State
jail felony.  The parties were given the opportunity to brief
that issue and neither party has shown that there was any
provision in the Texas Code of Criminal Procedure relating to the
dismissal of a criminal proceeding after the completion of
probation where the offense was a State jail felony.  Accordingly
the Court finds the respondent has not shown that his criminal

A 41 640 086                    6              January 15, 1999

lwm

proceeding has been or will be dismissed after probation or as it is called in Texas, community supervision, even if he successfully completes the period of community supervision. Therefore the respondent has not met the requirement in Part 4 of the Manrique test.

The Court further concludes the respondent has not met the requirement in Part 2 of the Manrique test because under the immigration law the respondent's offense of possession of cocaine pursuant to the conviction in the State of Texas is considered illicit trafficking in a controlled substance and therefore an aggravated felony under Section 101(a)(43)(B) of the Act because it is a drug trafficking crime as defined in Section 924(c) of Title 18, United States Code, as will be discussed below.

Section 101(a)(43)(B) of the Act defines an aggravated felony as "illicit trafficking in a controlled substance (as defined in Section 102 of the Controlled Substances Act) including a drug trafficking crime (as defined in Section 924(c) of Title 18 United States Code)." Section 924(c)(2) defines a "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 United States Code 801 et seq). The Controlled Substances Import and Export Act (21 United States Code 951 et seq) or the Maritime Drug Law Enforcement Act (46 United States Code app. 1901 et seq)."

In United States v. Hinojosa-Lopez, 130 F.3rd 691 (5th Cir. 1997), the United States Court of Appeals for the 5th

A 41 640 086                    7                    January 15, 1999

lwm

Circuit interpreted Section 924(c)(2) of Title 18 United States Code to include a félony as defined by the law of the State wherein an individual is convicted if the offense is also punishable under one of the three Federal statutes, even if the offense would have been classified as a misdemeanor if prosecuted under the Federal statute.

This Court recognizes that in Matter of L-G-, Int. Dec. 3254 (BIA 1995) the Board of Immigration Appeals held that a State controlled offense may be considered a "drug trafficking crime" under 18 United States Code 924(c)(2) and therefore an aggravated felony under Section 101(a)(43)(B) of the Act only if it is punishable as a felony under one of the three Federal statutes mentioned in 18 United States Code 924(c)(2). However, the Board has consistently held that it will follow the decisions of a United States Court of Appeals in cases arising in that particular circuit, see Matter of L-G-, supra, at slip opinion page 22.

This Court also recognizes that United States v. Hinojosa-Lopez, supra, involved the application of the United States sentencing guidelines and not the Immigration and Nationality Act. However the essential issue in United States v. Henojosa-Lopez as in the present case is the interpretation of "drug trafficking crime" as defined in 18 United States Code 924(c)(2), further that interpretation was made in the context of deciding whether a controlled substance offense met the

A 41 640 086                    8                    January 15, 1999

lwm

definition of an "aggravated felony" under the sentencing guidelines which in pertinent part has essentially the same definition as in "aggravated felony" under Section 101(a)(43)(B) of the Act.  This Court concludes it is required to apply the 5th Circuit's interpretation of 18 United States Code 924(c)(2) in United States v. Hinojosa-Lopez to the present case because this case arises within the jurisdiction of the United States Court of Appeals of the 5th Circuit.

In the present case respondent's conviction of the possession of cocaine is a felony under Texas law as shown by the judgment of conviction.  Further possession of cocaine is an offense punishable under the Controlled Substances Act, 21 United States Code, Section 844(a).  Therefore respondent's conviction is for a drug trafficking crime as defined in Section 924(c) of Title 18 United States Code, as such it constitutes illicit trafficking in a controlled substance as defined in Section 102 of the Controlled Substances Act, and therefore it is an aggravated felony under Section 101(a)(43)(B) of the Act.  Since respondent's conviction is considered under Section 101(a)(43)(B) of the Act to be illicit trafficking in a controlled substance, the Court concludes that respondent has not met the requirement of Part 2 of the Manrique test where respondent must show that he has been found guilty of the offense of simple possession of a controlled substance.

Accordingly, the Court finds that respondent is subject

A 41 640 086                    9              January 15, 1999

lwm

to removal as charged in the Notice to Appear under Section
237(a)(2)(B)(i) of the Act.  Respondent's removability has been
established by clear and convincing evidence.

Respondent selected Mexico as the country for removal
if removal were to become necessary.  Respondent has requested
relief from removal in the form of cancellation of removal for
permanent residence under Section 240(A)(a) of the Act.
Respondent has filed his application for cancellation of removal
under that provision, however the Court will pretermit that
application because the Court finds the respondent is not
eligible to apply for cancellation of removal under Section
240(A)(a) of the Act in that he has been convicted of an
aggravated felony as discussed above.  Therefore an order of
removal would be entered in this case.

ORDER

WHEREFORE IT IS HEREBY ORDERED that respondent's

A 41 640 086                    10              January 15, 1999

lwm

application for cancellation of removal under Section 240(A)(a) of the Act be denied as a matter of statutory eligibility.

IT IS FURTHER ORDERED that respondent be removed from the United States to Mexico pursuant to the charge of removability stated in the Notice to Appear.

Dated this 15th day of January 1999.

_____
HOWARD ACHTSAM
Immigration Judge

A 41 640 086                    11              January 15, 1999

GOVERNMENT
EXHIBIT
*E*

IMMIGRATION COURT
201 E. JACKSON STREET
HARLINGEN, TX  78550

In the Matter of

SANDOVAL-HERRERA, MANUEL
        Respondent

Case No.: A41-640-086

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Jan 15, 1999.
This memorandum is solely for the convenience of the parties.  If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[✓]  The respondent was ordered removed from the United States to
       MEXICO or in the alternative to

[ ]  Respondent's application for voluntary departure was denied and
       respondent was ordered removed to MEXICO or in the
       alternative to

[ ]  Respondent's application for voluntary departure was granted until
       upon posting a bond in the amount of $ _____
       with an alternate order of removal to MEXICO.

[ ]  Respondent's application for asylum was ( )granted  ( )denied
       ( )withdrawn.

[ ]  Respondent's application for withholding of removal was ( )granted
       ( )denied  ( )withdrawn.

[✓]  Respondent's application for cancellation of removal under section
       240A(a) was ( )granted  (✓)denied  ( )withdrawn.

[ ]  Respondent's application for cancellation of removal was ( ) granted
       under section 240A(b)(1)    ( ) granted under section 240A(b)(2)
       ( ) denied  ( ) withdrawn.  If granted, it was ordered that the
       respondent be issued all appropriate documents necessary to give
       effect to this order.

[ ]  Respondent's application for a waiver under section _____ of the INA u
       ( )granted  ( )denied  ( )withdrawn or ( )other.

[ ]  Respondent's application for adjustment of status under section _____
       of the INA was ( )granted  ( )denied  ( )withdrawn.  If granted, it
       was ordered that respondent be issued all appropriate documents necessa
       to give effect to this order.

[ ]  Respondent's status was rescinded under section 246.

[ ]  Respondent is admitted to the United States as a _____ until _____

[ ]  As a condition of admission, respondent is to post a $ _____ bond.

[ ]  Respondent knowingly filed a frivolous asylum application after proper
       notice.

[ ]  Respondent was advised of the limitation on discretionary relief for
       failure to appear as ordered in the Immigration Judge's oral decision.

[ ]  Proceedings were terminated.

[ ]  Other: _____
       Date:  Jan 15, 1999
       Appeal: RESERVED    Appeal Due By: Feb 16, 1999

       Encl: Form EOIR-26

HOWARD E. ACHTSAM
Immigration Judge

MCC



**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1105-0065
**Notice of Appeal to the Board of Immigration**
Appeals of Decision of Immigration Judge

---

1. List Name(s) and "A" Number(s) of all Applicant(s)/Respondent(s):

MANUEL HERRERA SANDOVAL
A41-640-086

For Official Use Only

*RECEIVED DISTRICT COUNSEL HARLINGEN TX*
*99 FEB 17 PM 3:26*

**❗ WARNING TO ALL APPLICANT(S)/RESPONDENT(S):** Names and "A" Numbers of everyone appealing the order must be written in Item #1.

2. Applicant/Respondent is currently ☐ DETAINED ☒ NOT DETAINED.

3. Appeal from the Immigration Judge's decision dated _JANUARY 15, 1999_

4. **State in detail the reason(s) for this appeal. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

   ❗ **WARNING:** The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice, unless you give specific details in a timely, separate written brief or statement filed with the Board.

   ### REASONS FOR THE APPEAL

   (1) The Immigration Judge erred in not terminating Respondent's immigration proceeding pursuant to In Re Manrique, I.D. 3250 (BIA 1995),

   (2) The Immigration Judge erred in determining that Respondent's conviction, possession of a controlled substance, to wit: cocaine, is an aggravated felony,

   (3) The Immigration Judge erred in determining that the Respondent was not eligible for filing Cancellation of Removal for a Resident Alien based on his determination that respondent's conviction was an aggravated felony.

   (4) There are too many other issues to identify without a transcript.

   (Attach more sheets if necessary)

*Staple Check or Money Order Here. Include your name(s) and "A" number(s)*

(Form continues on back)
Form EOIR-26
Revised April 1996

5.  I  [×] do
       [ ] do not        desire oral argument before the Board of Immigration Appeals.

6.  I  [X] will
       [ ] will not      file a separate written brief or statement in addition to the "Reason(s) for
                         Appeal" written above or accompanying this form.

> **!** **WARNING:** Your appeal may be summarily dismissed if you indicate in Item #6 that you will file a separate written brief or statement and, within the time set for filing, you fail to file the brief or statement and do not reasonably explain such failure.

**SIGN HERE** →    7.  X _____(signature)_____        ___2/12/99___
                        Signature of Person Appealing          Date
                        *(or attorney or representative)*

8.                                              9.

| Mailing Address of Applicant(s)/Respondent(s) | Mailing Address of Attorney or Representative |
|---|---|
| MANUEL HERRERA SANDIVAL | THELMA O. GARCIA |
| (Name) | (Name) |
| 215 PARK STREET | 301 E. MADISON |
| (Street Address) | (Street Address) |
| (Apartment or Room Number) | (Suite or Room Number) |
| BROWNSVILLE, TEXAS 78550 | HARLINGEN, TEXAS 78550 |
| (City, State, Zip Code) | (City, State, Zip Code) |

> **!** **WARNING:** An attorney or representative will not be recognized as counsel on appeal and will not receive documents or correspondence in connection with the appeal, unless he/she submits a completed Form EOIR-27.

## CERTIFICATE OF SERVICE
### (Must Be Completed)

10.

I _____THELMA O. GARCIA_____ mailed or delivered a copy of this notice of appeal
        (Name)

on ___FEBRUARY 12, 1999___ to ___GENERAL COUNSEL___
        (Date)                        (Opposing Party)

at ___P.O. BOX 1711 HARLINGEN, TEXAS 78551___
        (Address of Opposing Party)

**SIGN HERE** →   X _____(signature)_____
                     Signature of Person Appealing
                     *(or attorney or representative)*

### Have You?

- [ ] Read all of the General Instructions
- [ ] Provided all of the requested information
- [ ] Completed this form in English
- [ ] Provided a certified English translation for all non-English attachments

- [ ] Signed the form
- [ ] Served a copy of this form and all attachments on the opposing party
- [ ] Completed and signed the Certificate of Service
- [ ] Attached the required fee or fee waiver request



EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE BOARD OF IMMIGRATION APPEALS

In re
MANUEL SANDOVAL-HERRERA
A41 640 086

RESPONDENT'S BRIEF ON APPEAL

Comes Respondent, by and through the undersigned, and files the
instant brief, in support of his appeal from the decision of the
Immigration Judge, dated January 15, 1999, finding that (1)
Respondent is deportable as charged, as one convicted of an
aggravated felony, (2) he is ineligible for any form of relief, and
(3) ordering his deportation to Mexico.

## I.   THE FACTS

Manuel Sandoval Herrera is a native and citizen of Mexico, who was
admitted to the United States as a lawful permanent resident on or
about July 25, 1988, and has resided continuously in this country
since that time.  On November 7, 1996, Respondent was convicted in
Cameron County, Texas, on his plea of guilty, of the offense of
simple possession of a controlled substance, to wit, cocaine,
sentenced to two years imprisonment in State Jail, and placed on
probation for five years.

A Notice to Appear was issued on July 14, 1997.  At his hearing,
Respondent urged that, under *Matter of Manrique,* I.D. 3250 (BIA
1995), he was not deportable as charged.  In the alternative, he
sought relief in the form of cancellation of removal.  The
Immigration Judge rejected both claims, finding that the charges
had not been dismissed, as required by *Manrique,* and that his
conviction was for an aggravated felony, under *U.S. v. Hinojosa-
Lopez,* 130 F.3d 691 (5th Cir. 1997).  Respondent appealed.

## II.  ISSUE PRESENTED [1]

UNDER *MATTER OF K-V-D-*, I.D. 3422 (BIA 1999), RESPONDENT'S CONVICTION IS NOT FOR AN AGGRAVATED FELONY, AND HE IS ELIGIBLE FOR CANCELLATION OF REMOVAL.

On December 10, 1999 this Board issued *Matter of K-V-D-*, holding that it was free to interpret §101(a)(43)(B) of the Act differently for immigration purposes than the Fifth Circuit's interpretation in *Hinojosa-Lopez*, which was a Sentencing Guidelines case.  The Board further reaffirmed its longtime policy of determining whether an offense was a "drug trafficking" crime by reference to federal guidelines, rather than on the basis of the State designation. *See*, *Matter of L-G-*, I.D. 3254 (BIA 1995) (simple possession of a controlled substance other than crack cocaine would be a misdemeanor under federal law, and is therefore not a drug "trafficking" offense, or an aggravated felony.).

Under *K-V-D-*, Respondent's offense is therefore not an aggravated felony.  It was committed on June 22, 1996, more than seven years after his entry as a permanent resident, (Petitioner's Exhibit A, herein incorporated by reference).  He has resided continuously in the United States since his entry, and is consequently eligible for cancellation of removal.

Respectfully Submitted,

Thelma O Garcia, Attorney
301 E. Madison
_____

---

    [1]  Respondent would also reserve the right, on remand, to present additional evidence on the *Manrique* issue.

2

Harlingen, Texas 78550
(956) 425-3701

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed to the Office of the INS General Attorney, Box 1711, Harlingen, Texas, 78551, on December    , 1999.

3



Falls Church, Virginia 22041

File:  A41 640 086 - Harlingen                           Date:

[APR 0 3 2002

In re:  MANUEL SANDOVAL HERRERA

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Thelma O. Garcia, Esquire

ON BEHALF OF SERVICE:    Thomas M. Bernstein
                         Assistant District Counsel

CHARGE:

    Notice:   Sec.    237(a)(2)(B)(i), I&N Act [8 U.S.C. § 1227(a)(2)(B)(i)] -
                      Convicted of a controlled substance violation


APPLICATION:  Termination; cancellation of removal


ORDER:

    PER CURIAM.  The respondent timely appeals an Immigration Judge's January 15, 1999,
decision finding him removable under section 237(a)(2)(B)(i) (convicted of a controlled substance
violation) and ineligible for the relief of cancellation of removal because that offense constitutes an
aggravated felony as defined in section 101(a)(43)(B) of the Immigration and Nationality Act,
8 U.S.C. § 1101(43)(B).  *See* section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. §
1229b(a)(3).

    It is undisputed that the respondent was convicted in the 103d District Court in Cameron County,
Texas, based on his plea of guilty to the offense of possession of a controlled substance (cocaine),
and sentenced to a 2-year suspended sentence of confinement and a 5-year period of supervision.
The applicable provision of the Texas Penal Code is not specified on the judgment of conviction.
However, the conviction document states on its face that the offense is a state felony (Exh. 2).

    On appeal, the respondent maintains that this offense is not an aggravated felony so as to bar a
grant of cancellation of removal.  He also revisits his contention below that he does not have a
conviction pursuant to our decision in *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995).  Our recent
decision in *Matter of Salazar*, 23 I&N Dec. 223 (BIA 2002) is dispositive of both arguments.  We
held in *Matter of Salazar, supra*, that we will follow the precedent decisions of the Fifth Circuit in
*United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir 2000, cert. Denied, 122 S. Ct. 305 (2001)
and *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1991) in cases, such as this one, which

arise in its jurisdiction.  In the Fifth Circuit, a felony drug possession conviction is an aggravated felony as defined in section 101(a)(43)(B) of the Act.  *Id.*   In *Matter of Salazar*, *supra*, we also reaffirmed our decision in *Matter of Roldan*, Interim Decision 3377 (BIA 1999), which held that state rehabilitative measures have no effect in ameliorating the consequences of a conviction satisfying the definition at section 101(a)(48) of the Act.

Therefore, even if the respondent had successfully established that he was the beneficiary of a state rehabilitative measure, he has a conviction for immigration purposes.  Moreover, under Fifth Circuit precedent, that conviction is an aggravated felony which bars him from a grant of cancellation of removal.  *Matter of Salazar*, *supra*.  The appeal is dismissed.

FOR THE BOARD

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


| | |
|---|---|
| MANUEL SANDOVAL-HERRERA, ) | |
| ) | |
| v.                          ) | |
| ) | CIVIL ACTION NO. B-02-138 |
| AARON CABRERA, ACTING       ) | |
| DIRECTOR, HLG/DO, THE        ) | |
| IMMIGRATION & NATURALIZATION ) | |
| SERVICE, and                ) | |
| JOHN ASHCROFT, UNITED STATES ) | |
| ATTORNEY GENERAL            ) | |
| _____ ) | |


ORDER

Upon consideration of the arguments of Petitioners and Respondents, the Court finds that Respondents' motion to dismiss should be granted.

It is therefore

ORDERED, ADJUDGED AND DECREED that the petition for habeas corpus is dismissed.

This is a final Order.

Done this _____ day of _____, 2002, in Brownsville, Texas.


_____
UNITED STATES DISTRICT JUDGE