35

United States District Court
Southern District of Texas
ENTERED

OCT 0 2 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LAURA ESTELLA SALAZAR-REGINO, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-45 |
| | § | |
| E.M. TROMINSKI, | § | |
| INS DISTRICT DIRECTOR, ET AL. | § | |
| | § | |

| | | |
|---|---|---|
| TEODULO CANTU-DELGADILLO, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-114 |
| | § | |
| E.M. TROMINSKI, | § | |
| INS DISTRICT DIRECTOR, ET AL. | § | |
| | § | |

| | | |
|---|---|---|
| DANIEL CARRIZALOS-PEREZ, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-136 |
| | § | |
| AARON CABRERA, | § | |
| INS ACTING DISTRICT DIRECTOR, | § | |
| ET AL. | § | |
| | § | |

| | | |
|---|---|---|
| MANUEL SANDOVAL-HERRERA, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-138 |
| | § | |
| AARON CABRERA, | § | |
| INS ACTING DISTRICT DIRECTOR, | § | |
| ET AL. | § | |

-1

RAUL HERNANDEZ-PANTOJA,                    §
                                            §
v.                                          §          CIVIL ACTION NO. B-02-197
                                            §
JOHN ASHCROFT, ATTORNEY GENERAL §
OF THE UNITED STATES, ET AL.               §
                                            §

---

JOSE MARTIN OVIEDO-SIFUENTES,              §
                                            §
v.                                          §          CIVIL ACTION NO. B-02-198
                                            §
JOHN ASHCROFT, ATTORNEY GENERAL §
OF THE UNITED STATES, ET AL.               §
                                            §

---

CESAR LUCIO,                                §
                                            §
v.                                          §          CIVIL ACTION NO. B-02-225
                                            §
JOHN ASHCROFT, ATTORNEY GENERAL §
OF THE UNITED STATES, ET AL.               §
                                            §

---

PRAXEDIS RODRIGUEZ-CASTRO,                 §
                                            §
v.                                          §          CIVIL ACTION NO. B-02-228
                                            §
JOHN ASHCROFT, ATTORNEY GENERAL §
OF THE UNITED STATES, ET AL.               §
                                            §

---

NOHEMI RANGEL-RIVERA,                       §
                                            §
v.                                          §          CIVIL ACTION NO. B-03-002
                                            §
JOHN ASHCROFT, ATTORNEY GENERAL §
OF THE UNITED STATES, ET AL.               §
                                            §

## ORDER

BE IT REMEMBERED that on September 30, 2003, the Court considered Respondents'[1] timely objections to the Magistrate Judge's Report and Recommendation ("R&R").  Because no parties have objected to the consolidation of the above listed cases, and because the habeas petitions involve common questions of law and fact, the Court consolidates Petitioners' cases and reviews the claims in one decision.  See Fed. R. Civ. P. 42.  For the reasons that follow, the Court **DECLINES TO ADOPT** the final determination of the Report and Recommendation and **DENIES** Petitioners' habeas petitions.

### I. Standard of Review of Magistrate Judge's Report and Recommendation

Petitioners bring this action pursuant to 28 U.S.C. § 2241 seeking a writ a habeas corpus.  After referral to a United States Magistrate Judge, this Court reviews *de novo* those portions of the R&R to which objection is made.  "A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate."  28 U.S.C. § 636(b)(1)(C).  Those portions of the R&R for which there are no objections the Court reviews for clearly erroneous findings and conclusions of law.  See United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

### II. Factual and Procedural Background

The Magistrate Judge presented a consolidated R&R due to the similar nature of the Petitioners' claims and factual and procedural backgrounds.  Respondents lodged a number of objections to the Magistrate Judge's R&R.  Neither Petitioners nor the INS objected to the Magistrate Judge's consolidation of these cases.  Those objections concerning the Magistrate Judge's factual findings focus on his election to conduct an

---

[1]At the time this habeas petition was filed, the Immigration and Naturalization Service ("INS") was an agency organized within the United States Department of Justice.  The former INS has now been reorganized into the Bureau of Immigration and Customs Enforcement ("ICE") within the new United States Department of Homeland Security.  See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (2002).  For ease of reference, this decision will refer to the agency as the INS.

evidentiary hearing and consider additional testimony regarding the Petitioners'
understanding of the law and immigration consequences at the time they entered into
plea agreements at the state court level.  The objections, therefore, do not focus on the
general factual backgrounds of each Petitioner.  This Court adopts by reference *only*
the Magistrate Judge's recitation of each Petitioners' criminal and immigration history,
as is supported by the administrative record.

At the time of entering their guilty pleas, all Petitioners were lawful permanent
residents ("LPRs").  Petitioners seek habeas corpus relief after receiving final orders of
removal from the Board of Immigration Appeals ("BIA").  Petitioners raise constitutional
and statutory challenges to the BIA's conclusions that they are removable because they
were convicted of an aggravated felony under the Immigration and Nationality Act
("INA").  <u>See</u> 8 U.S.C. § 1227(a)(2)(B)(i).

All Petitioners pled guilty in state courts to offenses involving simple possession
of a controlled substance.  Several petitioners received deferred adjudication,[2] and
others received punishment consisting of probation.  At the time Petitioners entered
their plea agreements, their offenses under state rehabilitative statutes were not, as a
matter of BIA policy, considered convictions if the aliens met certain requirements.
Additionally, their offenses of simple possession of a controlled substance were not
considered to be aggravated felonies under the INA.  Nevertheless, as a result of
changes in the law after Petitioners pled guilty, to be discussed in this opinion, the INS
later initiated removal proceedings on the basis of these convictions.  Because the
Petitioners' offenses of simple possession are classified as aggravated felonies,
Petitioners are each ineligible to apply for cancellation of removal under the relief
established in 8 U.S.C. § 1229b(a)(3) (providing aliens convicted of aggravated felonies
are ineligible for cancellation of removal).  Absent a conviction for an aggravated felony,
the Petitioners would have been eligible to apply for cancellation of removal under

---

[2]Some Petitioners received deferred adjudication pursuant to the Texas Code of
Criminal Procedure, art. 42.12, § 5 (authorizing a judge to "defer further proceedings without
entering an adjudication of guilt" after a defendant's plea of guilty or *nolo contendere*, "and
place the defendant on community supervision.").

4

section 1229b because Petitioners pled guilty prior to the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").

Because the Court finds the Magistrate Judge's R&R is not supported by the law, the Court **DECLINES TO ADOPT** the R&R. For the reasons that follow, the Court **DENIES** Petitioners all requested relief.

### III. Legal Framework[3]

Before Congress passed IIRIRA, the BIA struggled to define "conviction" for immigration purposes because most states, like Texas, have rehabilitative statutes that allow for deferred adjudication or forms of expungement. See, e.g., Matter of Roldan-Santoyo, Int. Dec. 3377 (BIA 1999), order vacated sub nom. Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir. 2000). The Federal First Offender Act ("FFOA") is an example of a rehabilitative statute at the federal level. See 18 U.S.C. § 3607(a). This statute allows first time offenders found guilty under federal law for simple possession of a controlled substance to be placed on probation for a term not to exceed one year. See id. Upon successful completion of the probationary period, the sentencing court then dismisses the proceedings and discharges the offender from probation. See id. Most relevant for the cases now before this Court, the statute provides that a conviction under the FFOA "shall not be considered a conviction for the purpose of a disqualification or disability imposed by law upon the conviction of a crime, or for any other purpose." Id. § 3607(b).

Long before the enactment of the FFOA, the BIA instituted a policy whereby it disregarded the expungement of drug convictions under state law, and therefore did not permit an expunged state drug conviction to be eliminated for immigration purposes. See Matter of A-F, 8 I.&N. Dec. 429, 445-46 (BIA, A.G. 1956). See also Lujan-Armendariz, 222 F.3d at 734-43 (recounting the legal developments concerning the BIA's policy and convictions under immigration law). Courts of appeals followed suit

---

[3]The Court sets out only a brief description of case law history concerning the concept of criminal convictions and their treatment under state and federal rehabilitative statutes. For more detailed accounts, see Matter of Roldan, Int. Dec. 3377 (BIA 1999); In re Salazar-Regino, 23 I. & N. Dec. 223 (BIA 2002); In re Yanez-Garcia, 23 I. & N. 390 (BIA 2002).

and agreed that aliens could not escape deportation by technical erasure of the
conviction. See, e.g., Gonzalez de Lara v. United States, 439 F.2d 1316 (5th Cir. 1971).

With the enactment of the FFOA, the BIA altered this policy and held that drug
offenses expunged under the FFOA, or under a state law "counterpart" to the FFOA
would not be considered a conviction for immigration purposes and would therefore not
serve as the predicate for deportation. See Matter of Werk, 16 I. & N. Dec. 234 (BIA
1977). The BIA defined a state law "counterpart" as a state rehabilitative statute no
"broader in scope than the FFOA." In re Manrique, 21 I.&N. Dec. 58 (BIA 1995). Later,
In re Manrique established new "first offender treatment under the immigration laws."
The BIA determined, "the policy of leniency in immigration proceedings shown to aliens
subject to treatment under [the FFOA] will be extended to aliens prosecuted under state
law who establish [certain] criteria." Manrique, 21 I.&N. Dec. at 64. To qualify for this
leniency, the alien had to: 1) be a first offender of controlled substance laws, 2) have
pled or been found guilty of the offense of simple possession of a controlled substance,
and 3) not have previously been accorded first offender treatment under any law.
Additionally, "[t]he court [must] enter[ ] an order pursuant to a state rehabilitative statute
under which the alien's criminal proceedings have been deferred pending successful
completion of probation or the proceedings have been or will be dismissed after
probation." Manrique, 21 I.&N. at 64. Under the policy announced in Manrique, "an
alien who has been accorded rehabilitative treatment under a state statute [would] not
be deported if he establish[ed] that he would have been eligible for federal first offender
treatment under the provisions of the [FFOA] had he been prosecuted under federal
law." Id. at 58. Through its decision in Manrique, the BIA attempted to equalize
treatment of those aliens who had committed the same crime as first-time offenders,
but who were treated differently for immigration purposes. At the time, different
treatment depended upon whether offenses were expunged under the FFOA or a state
law counterpart (for which they would not be deported) or expunged under another
state law (for which they could deported).

After the BIA's new requirements were announced in Manrique and put into
place, Congress enacted IIRIRA in 1996. For the first time, Congress provided a

definition of "conviction" in section 1101(a)(48)(A).  That definition is in effect today and states:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has ben withheld, where-
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted to sufficient facts to warrant a finding of guilt, and
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

The enactment of this new definition in IIRIRA sparked a debate as to whether various forms of expungements, dismissals, vacaturs, discharges, or other forms of removing a guilty plea or record of guilt would be given effect in the immigration context, and thus relieve the alien from deportation resulting from his conviction.  The BIA took the position in Matter of Roldan-Santoyo, 22 I.&N. Dec. 512 (BIA 1999) that the statutory definition of "conviction" in section 1101(a)(48)(A) superseded the BIA's earlier holding in Matter of Manrique.  Accordingly, Roldan held that "an alien is considered convicted for immigration purposes upon the initial satisfaction of the requirements of section 1101(a)(48)(A) of the Act, and that he remains convicted notwithstanding a subsequent state action purporting to erase all evidence of the original determination of guilt through a rehabilitative statute." 22 I.&N. 512.  See also Moosa v. INS, 171 F.3d 994, 997, 1005-06 (5th Cir. 1999) (holding that alien who completed a term of supervision pursuant to the Texas deferred adjudication statute remained "convicted" for immigration purposes under 1101(a)(48)(A)).  In Roldan, therefore, the BIA's rationale was that Congress "intends that the determination of whether an alien is convicted for immigration purposes be fixed at the time of the original determination of guilt, coupled with the imposition of some punishment." 22 I. & N. Dec. 512.

Circuit courts have weighed in on the effect of section 1101(a)(48)(A) on the BIA's earlier policies. Most notably, the Ninth Circuit disagreed with the BIA's interpretation in Roldan, and in an appeal of that case ruled that arguments suggesting

that section 1101(a)(48)(A) eliminates the BIA's policy that certain expunged convictions may not serve as the basis for removal were unpersuasive. See Lujan-Armendariz, 222 F.3d at 742. Other circuit courts have found the Ninth Circuit's analysis somewhat terse and itself unpersuasive. See Gill v. Ashcroft, 335 F.3d 574, 578 (7th Cir. 2003) (disagreeing with Lujan-Armendariz, and holding that section 1101(a)(48)(A) abolishes for immigration law purposes any special treatment for deferred dispositions in first offender drug offenses); Vasquez-Velezmoro v. United States Immigration and Naturalization Service, 281 F.3d 693, 697 (8th Cir. 2002) (declining to adopt the reasoning of Lujan-Armendariz and noting "that whether the [section] 1108(a)(48)(A) [sic] definition of conviction implicitly repealed the FFOA, so that aliens whose convictions are expunged under the FFOA have convictions under immigration law, is an unsettled question."). Lujan-Armendariz also found "that the benefits of the [FFOA should] be extended to aliens whose offenses are expunged under state rehabilitative laws, provided they would have been eligible for relief under the [FFOA] had their offenses been prosecuted as federal crimes." 222 F.3d at 749. On appeal in the cases now before this Court, the BIA applied its holding in Roldan and held that even first time simple drug possession offenses that are expunged under a state rehabilitative statute are convictions under section 101(a)(48)(A) of the INA. See Salazar-Regino, 23 I. & N. 223.

     In addition to the above case law history concerning the definition of conviction, federal circuit courts of appeal have also grappled with defining what constitutes an "aggravated felony" for the purpose of immigration law. Citing United States v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001) the BIA determined in Salazar-Regino that the offense of simple possession under Texas law, even with attendant deferred adjudication, constituted an aggravated felony in the Fifth Circuit. See Salazar-Regino, 23 I. & N. 223. The Fifth Circuit in Hernandez-Avalos stated, "we believe Congress intended that state drug convictions [for possession of a controlled substance] be included in the definition of "aggravated felony." 251 F.3d at 508. In making this determination, the Fifth Circuit applied its earlier holding in United States v. Hinojosa-Lopez, which held that for the purpose of applying the sentencing guidelines, a state

8

drug offense that is classified as a felony under state law is an aggravated felony, despite the fact that the offense would be punishable only as a misdemeanor under federal law. See id. See also United States v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997).

Soon after the decision in Salazar-Regino, the BIA issued In re Yanez-Garcia, 23 I. & N. Dec. 390 (BIA 2002). Yanez-Garcia overruled the BIA's previous decision in Matter of K-V-D, which held that state drug offenses could be considered aggravated felonies under immigration law consequences only if they were "analogous" to offenses punishable as felonies under the federal drug laws. See Matter of K-V-D, Interim Decision 3422 (BIA 1999).[4] The BIA held in Yanez-Garcia "that because the meaning of the phrase "drug trafficking crime" in 18 U.S.C. § 924(c)(2) is a matter of criminal federal law, [the BIA] shall defer to the interpretation given that statute by the federal circuit courts of appeals that have spoken on the issue." 23 I. & N. Dec. 390 (BIA 2002). The BIA further determined that it would adopt the interpretation used by a majority of the circuit courts for those cases arising in circuits that have not yet addressed the issue. The Fifth Circuit's interpretation of section 924(c)(2) is among the majority, and determines that an offense classified as a felony under state law constitutes a felony for immigration purposes regardless of its hypothetical classification under federal law had the alien been convicted under federal law. As the BIA noted, the Fifth Circuit explicitly rejected the legal rationale underpinning K-V-D when it disagreed with the BIA's interpretation of section 924(c)(2) and stated that Section 924(c)(2) should not be interpreted differently in immigration and criminal cases. See Yanez-Garcia, 23 I. & N. Dec. at 392 (referencing United States v. Hernandez-Avalos, 251 F.3d 505 (2001)).

### IV. Petitioners' Arguments and Magistrate Judge's R&R

All Petitioners make four[5] arguments concerning statutory construction and

---

[4]K-V-D interpreted 18 U.S.C. § 924(c)(2), which is the federal criminal statute incorporated into the aggravated felony definition by section 101(a)(43)(B) of the INA.

[5]Petitioners lodge a fifth argument that the Court does not reach, namely that the BIA's orders of removal violate international law and United States treaty obligations. Their brief

constitutional violations:

1) the BIA erred as a matter of law when it applied the Fifth Circuit's decision in Hernandez-Avalos and held their offenses were convictions despite deferred adjudication; and the BIA incorrectly decided Roldan because Title 8, Section 1101(a)(48)(A) does not overrule the policy and requirements announced in Manrique;

2) Petitioners' Equal Protection rights are violated when the BIA renders different removal determinations based on whether aliens are convicted for certain offenses under state or federal law, and thus the BIA should apply Lujan-Armendariz's determination in the Fifth Circuit; Petitioners' Equal Protection rights are violated because a circuit split exists concerning the interpretation of "aggravated felonies" under immigration law; and Petitioners' Equal Protection rights are violated because of the timing of their proceedings in conjunction with the Fifth Circuit's issuance of Hernandez-Avalos;

3) Petitioners' fundamental liberty interests were violated by a constellation of factors including: the new definition of conviction enacted in IIRIRA, codified in section 1101(a)(48)(A); and repeal of section 212(c) relief for those convicted of aggravated felonies. Petitioners argue these factors create a "conclusive presumption" that all LPRs convicted of these offenses are "unworthy" of remaining in the United States and such new provisions are unjustifiable and not narrowly tailored to meet compelling state need; and

4) Petitioners' procedural due process rights were violated when the BIA retroactively applied the Fifth Circuit's definition of "aggravated felonies," as determined in United States v. Hernandez-Avalos, 251 F.3d 505 (2001).

The Magistrate Judge does not reach claims one through three and five, but states that "Supreme Court and Fifth Circuit precedence seemingly [have] foreclosed all of these claims." R&R, at p. 35 [Dkt. No. 28]. The Magistrate Judge grants Petitioners relief on their fourth claim, finding their procedural due process rights were violated

---

arguments, however, fail to cite any persuasive or controlling authority. As a result, the Court does not address these arguments because Petitioners have not adequately stated a claim.

when the BIA applied the Hernandez-Avalos decision retroactively to their removal proceedings. The Magistrate Judge states, "Petitioners [sic] mandatory deportation is unlawful because it retroactively makes qualitative changes in the penalty imposed in a wholly unexpected manner." Id. at p. 37.

For the reasons that follow, the Court will not adopt the Magistrate Judge's determination.

### V. Objection I: Magistrate Judge Erred in Finding Jurisdiction

The INS argues this Court lacks subject-matter jurisdiction to review Petitioners' statutory and constitutional challenges to findings of removability based on aggravated felony convictions where direct review is available in the court of appeals. Additionally, INS argues the Fifth Circuit appellate court actually has jurisdiction to review "the statutory and legal challenges" raised by Petitioners. To support its argument, INS cites several Fifth Circuit cases decided before the Supreme Court issued its decision in St. Cyr. See, e.g., Requena-Rodriguez v. Pasquerell, 190 F.3d 299, 305 (5th Cir. 1999) (holding habeas jurisdiction under transitional rules is comprised of constitutional and statutory challenges that cannot be considered on direct review by courts of appeals); River-Sanchez v. Reno, 198 F.3d 545, 547 (5th Cir. 1999) (same). In its objections to the Magistrate Judge's R&R, the INS cites a post-St. Cyr Ninth Circuit case, Baeta v. Sonchik, 273 F.3d 1261, 1264 (9th Cir. 2001), which it argues stands for the proposition that "there is no habeas jurisdiction to review a removal order where the alien has failed to exhaust his judicial remedy of direct review." Respondents' Objections to Magistrate Judge's R&R, at p. 14.

Given the broad language concerning habeas jurisdiction used in Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 311-13 (2001), and Calcano-Martinez v. Immigration and Naturalization Service, 533 U.S. 348, 351 (2001), this Court cannot determine that it lacks jurisdiction to review constitutional and statutory challenges. The Supreme Court in St. Cyr stated that statutory language limiting judicial review does not bar habeas jurisdiction because "[a]t no point . . . does [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")] make express reference to § 2241. Given the historic use of § 2241 jurisdiction as a means of reviewing deportation and

exclusion orders, Congress' failure to refer specifically to § 2241 is particularly significant." Id. at 312 n. 35. See also Calcano-Martinez, 533 U.S. at 351-52.  Thus, the Supreme Court's decision in St. Cyr essentially determined that jurisdiction over constitutional and statutory issues is most appropriately raised in the district courts through habeas corpus, rather than in the courts of appeals. See St. Cyr, 533 U.S. at 312. See also Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1069 (9th Cir. 2003) (citing St. Cyr and Calcano-Martinez).  Courts of Appeals in other circuits have determined that IIRIRA does not preclude habeas jurisdiction. See, e.g., Wang v. Ashcroft, No. 02-2045, 2003 WL 255958, at *7-*8 (2d Cir. Feb. 6, 2003); Yuthok v. U.S. Immigration & Naturalization Serv., 51 Fed. Appx. 204, 205 (9th Cir. Nov. 12, 2002) (concerning denial of parole); Riley v. Immigration & Naturalization Serv., 310 F.3d 1253, 1255-56 (10th Cir. 2002).

Furthermore, other circuit courts have distinguished jurisdiction-related claims, appropriately decided in the courts of appeals, and statutory and constitutional challenges appropriate for habeas review in the district courts.  Additionally, they have held that the availability of an alternative forum of review does not conclusively determine, in the absence of plain Congressional intent, that habeas jurisdiction is no longer available for aliens convicted of felonies. See, e.g., Liu v. INS, 293 F.3d 36, 40 (2d Cir. 2002) (stating the forum availability argument simply reinforced, but did not determine, the conclusion that Congress had not clearly repealed habeas review and quoting St. Cyr, "'the plain statement rule draws additional reinforcement from other canons of statutory construction.'") (quoting St. Cyr, 533 U.S. at 305)); Chmakov v. Blackman, 266 F.3d 210, 214-15 (stating that after St. Cyr, "if Congress wishes to repeal habeas jurisdiction, it must satisfy two separate and independent requirements. First, that repeal must not violate the Suspension Clause.  Second, that repeal must be made in clear and unambiguous language.  There is simply no reason to conclude that the absence of one factor would negate the necessity for the other.").  These decisions indicate that even assuming Petitioners would have an alternative forum for complete review of their constitutional claims, and thus no violation of the Suspension Clause would occur if habeas review was not available, Congress must expressly repeal

habeas jurisdiction. Congress had expressed no such repeal here. But cf. Seale v.
INS, 323 F.3d 150, 152-54 (1ˢᵗ Cir. 2003) (concluding St. Cyr has some ambiguous
language, such that "[t]he question remains open whether the existence of another
available judicial forum to adjudicate the merits of an alien's claim overrides the
absence of a clear statement by Congress that it intended to strip the district courts of
their habeas jurisdiction.").

   The Fifth Circuit has not yet ruled on this precise jurisdictional issue. However,
this Court finds guidance in its recent decision in Flores-Garza v. INS, 328 F.3d 797,
803 (5ᵗʰ Cir. 2003). After determining that it lacked jurisdiction under IIRIRA because of
the jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(2)(C), the Court of Appeals
considered whether the district court had jurisdiction to consider constitutional and
statutory challenges, and determined that the district court's habeas jurisdiction "is
another matter altogether." One reading of this decision is that habeas corpus
jurisdiction in the district courts is not contingent upon a determination that the appeals
court lacks jurisdiction.

   Finally, despite the Fifth Circuit's "jurisdiction to review jurisdictional facts and
determine the proper scope of its own jurisdiction," not all of Petitioners' constitutional
and statutory claims would be reviewed and resolved. Flores-Garza, 328 F.3d at 802
(citation omitted). Thus, a jurisdictional inquiry would not likely be adequate to dispose
of Petitioner's constitutional claims. See, e.g., Cedano-Viera v. Ashcroft, 324 F.3d
1062, 1069-70 (9ᵗʰ Cir. 2003); Bosede v. Ashcroft, 309 F.3d 441, 446 (7ᵗʰ Cir. 2002)
(holding non-jurisdictional related constitutional claims cannot be determined on a
petition for direct review).

   In light of St. Cyr's edict that Congress must clearly express its intent to foreclose
constitutional challenges, and case law interpreting this decision, this Court determines
it has jurisdiction to review Petitioners' constitutional and statutory challenges.

## VI. Objection II: Magistrate Erred in Taking Additional Testimony and Considering Evidence Outside the Administrative Records

   The INS argues the Magistrate Judge erred in taking new evidence concerning
the Petitioners' understanding of immigration law at the time they entered their plea

13

agreements and Petitioners' reliance on the law at that time.   The INS also objects to the Magistrate Judge's consideration of counsel's unsworn representations concerning whether Petitioners were given warnings regarding the immigration consequences of entering a plea agreement.  Because the Court does not grant Petitioners' any of the requested relief, the Court does not address this objection.

## VII.  Objection III: Magistrate Erred in Ruling that Retroactive Application of Hernandez-Avalos Violates Due Process

INS argues the Magistrate Judge's finding that retroactive application of Hernandez-Avalos violates due process has already been rejected by the Fifth Circuit. INS states,

> [t]he Fifth Circuit has already rejected such a claim in Hernandez-Avalos.  There, the Fifth Circuit held that it does not violated due process, and is not fundamentally unfair, to remove an alien based on the correct construction of aggravated felony, even if his crime was not considered to be an aggravated felony at the time of his plea because of the BIA's misreading of the law.  521 F.3d at 508 ("[w]e see no reason why . . . it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law").

Respondent's Objections to R&R, at pp. 23-24 [Dkt. No. 32].

Although the Court agrees ultimately with INS's contention that retroactive application of Hernandez-Avalos does not violate the Due Process Clause, it does not agree with its interpretation of the holding in Hernandez-Avalos.[6]  The Fifth Circuit did *not* reject a similar retroactivity challenge because no such challenge was presented. Rather, the Petitioner, Hernandez, raised a due process challenge to an earlier removal

---

[6]The Fifth Circuit also affirmed its previous decision in United States v. Hinojosa-Lopez, 130 F.3d 691, 694 (5th Cir. 1997) where it defined the term "drug trafficking crime," originating in 18 U.S.C. § 924(c) and referenced in the INA, to mean "that a state drug conviction is a "drug trafficking crime" (and thus an aggravated felony) if "(1) the offense was punishable under the Controlled Substances Act and (2) it was a "felony" under either state or federal law."  Hernandez-Avalos, 251 F.3d at 508 (citing United States v. Hinojosa-Lopez, 130 F.3d at 694).

proceeding, which was the predicate for an indictment for illegal reentry under 8 U.S.C. § 1326. Hernandez argued it was fundamentally unfair when INS agents at the time of his removal mistakenly failed to follow BIA interpretations of "aggravated felonies." At the time of Hernandez's removal, the BIA did not consider his drug conviction for simple possession under Colorado law to be an aggravated felony. Thus, had INS then followed BIA precedent, Hernandez would not have been placed in expedited removal proceedings. Stated differently, the INS applied then what has since been determined to be the correct interpretation of "aggravated felony." The Fifth Circuit went on to state in *dicta* that were it to review Hernandez's order for removal on direct appeal, it would apply today's interpretation of "aggravated felony" and not the BIA's incorrect interpretation of "aggravated felony" at the time of the removal order. It stated, "[w]e see no reason why the procedural posture of this case requires us to hold that it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law."

This Court agrees with INS's contention that Hernandez-Avalos determined it would not be fundamentally unfair to use the current and correct definition of aggravated felony to a removal order on appeal. Although in some respects this distinction becomes an exercise in semantics, Hernandez-Avalos simply said it would not retroactively apply incorrect law to Hernandez's removal order, and hence give him the benefit of an agency's "erroneous interpretation of applicable law." Id. at 509. Having said this, however, the Court agrees that Hernandez-Avalos offers more than a little guidance on the issue of retroactivity and due process. Indeed, retroactive application of case law has long been a definitive rule espoused by the Supreme Court.

"The general principle that statutes operate prospectively and judicial decisions apply retroactively had been followed by the common law and the Supreme Court's decisions 'for near a thousand years.'" Hulin v. Fibreboard Corp., 178 F.3d 316, 329 & n. 5 (5th Cir. 1999) (quoting Kuhn v. Fairmont Coal Co., 5 U.S. 349, 372, 30 S.Ct. 140, 54 L.Ed. 228 (1910) (Holmes, J., dissenting)). This reasoning originates from the notion that "[w]hen [the courts] appl[y] a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given effect in all cases

still open on direct review and as to all events, regardless of whether such events predate or postdate [the court's] announcement of the rule." Harper v. Virginia Dep't of Taxation, 509 U.S. 86 (1993). Justice Scalia reasons in his concurring opinion in Harper that judges merely declare what the law is, and not what the law will be; overruling a former judicial decision is not a new declaration of law, but rather, a new decision that corrects legal error. See Harper, 509 U.S. at 69-70 (Scalia, J., concurring). There is no reason to believe that the usual canons of retroactivity does not apply here because these cases are being reviewed under habeas jurisdiction and not on direct review.

Historical retroactivity doctrines aside, Petitioners' procedural due process claims fail for another reason. In order to advance a due process claim, Petitioners must first establish they have a liberty or property interest at stake. The Fifth Circuit, along with others, has concluded that "[w]hile petitioners may have expected that they would be eligible for suspension of deportation, IIRIRA's amendment limited only their eligibility for discretionary relief; it did not infringe on a right that they possessed prior to its enactment." Gonzalez-Torres v. INS, 213 F.3d 899, 902 (5th Cir. 2000) (addressing the constitutionality of retroactive application of section 304(a) of the IIRIRA). In this respect, there is no due process "right" to eligibility for discretionary relief from removal orders. See Lopez de Jesus v. INS, 312 F.3d 155, 161-63 (5th Cir. 2002) (rejecting due process claim based on retroactive application of IIRIRA provision that precluded the Attorney General from granting a discretionary waiver of inadmissibility to an alien who helped a close family member enter the United States illegally unless the familial relationship existed at the time of the act of smuggling).[7] See also Tefel v. Reno, 180

---

[7]Although the Supreme Court recently held that ineligibility for discretionary relief in the form of cancellation of removal was a harsh retroactive effect of the new statutory scheme in IIRIRA, St. Cyr's claims were not based on the Due Process Clause. Indeed, the Fifth Circuit articulated this point in its recent decision, Lopez de Jesus, 312 F.3d at 164. St. Cyr's holding turned on the retroactive effect of a law in the absence of clear Congressional intent, particularly in those circumstances where a defendant alien entered a plea bargain whose terms allowed him to remain eligible for discretionary relief while the government secured the benefit of an expedited resolution of the case. See St. Cyr, 533 U.S. at 321-22. Were the Fifth Circuit to determine Petitioners have stated a due process violation based on a protected liberty

F.3d 1286, 1301-02 (11th Cir. 1999) ("[J]ust as [aliens] have no 'property or liberty'
interest in their expectancy of receiving suspension of deportation, they enjoy no 'liberty
or property' interest in being eligible to be considered for suspension.  Accordingly,
being ineligible for suspension does not deprive [aliens] of a constitutionally protected
interest any more than having their applications for suspension denied.") (cited in Lopez
de Jesus, 312 F.3d at 162-63)).  Additionally, the Fifth Circuit has held that "it is well
settled that Congress has the authority to make past criminal activity a new ground for
deportation."  Moosa v. INS, 171 F.3d 994, 1009 (5th Cir. 1999) (noting that even if an
alien agreed to a deferred adjudication plea agreement "'with an entirely different
understanding of the immigration consequences of his plea,'" past criminal activity could
still become a new ground for deportation).

Without a constitutionally protected interest, Petitioners cannot claim any
procedural due process violation.  Additionally, it is well-established that Courts may
apply their decisions retroactively.  Accordingly, the Court sustains INS's objection, and
will not adopt the Magistrate Judge's ruling on this claim.

## VIII.  Petitioners' Remaining Claims
### A.  Equal Protection Claim

Petitioners argue their Equal Protection rights are violated when the BIA renders
different removal determinations based on whether aliens are convicted for certain
offenses under state or federal law, and thus the BIA should apply Lujan-Armendariz in
the Fifth Circuit.  Petitioners further argue their Equal Protection rights are violated
because a circuit split exists concerning the interpretation of "aggravated felonies"
under immigration law, and the timing of their proceedings in conjunction with the Fifth
Circuit's issuance of Hernandez-Avalos bar relief.

Congress's authority over aliens is plenary.  This expansive power means that
courts subject classifications distinguishing groups of aliens to relaxed scrutiny under a

---

or property interest in eligibility for discretionary relief, it would have to apply St. Cyr to cases
alleging a constitutional Due Process Clause violation.  Given the discussion in the text of this
decision and Fifth Circuit law, this Court does not hold St. Cyr has such far-reaching
application.

rational basis of review. These classifications are valid unless they are arbitrary or unreasonable. Given "the need for special judicial deference to congressional policy choices in the immigration context," a "facially legitimate and bona fide reason" for different treatment will suffice to reject an equal protection claim. Fiallo v. Bell, 430 U.S. 787, 794, 793 (1977) (internal quotation omitted). See also FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993) (under a deferential rational-basis standard, the government's different treatment will "be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").

In requesting that this Court to adopt the reasoning in Lujan-Armendariz, Petitioners ask this Court to determine there is no rational basis for treating aliens whose convictions were expunged under state rehabilitative statutes differently from aliens prosecuted under federal statutes. The Ninth Circuit held in Lujan-Armendariz that it violated the Equal Protection Clause to withhold relief from removal to aliens who would have been eligible for relief under the FFOA had they been prosecuted under federal law, but who instead received expungements pursuant to state rehabilitative statutes. See Lujan-Armendariz, 222 F.3d at 742-43 & n.25.

Although the Fifth Circuit has not ruled on this issue directly, this Court finds it unlikely it would adopt the Ninth Circuit's sweeping interpretation of Equal Protection in this context. Other circuits have either avoided the issue of Equal Protection or determined that Equal Protection is not violated under these circumstances. For example, the Eighth Circuit in Vasquez-Velezmoro v. INS, rejected the Ninth Circuit's reasoning, and held that aliens prosecuted under state rehabilitative statutes were not similarly situated to aliens prosecuted under the FFOA. 281 F.3d 693, 697 (8th Cir. 2002). In Vasquez-Velezmoro, the Court determined that Petitioner's situation was not sufficiently similar to an individual eligible for treatment under the FFOA. Under the FFOA, a defendant is eligible for relief if he receives no more than a one year term of probation. 18 U.S.C. § 3607(a). Like the petitioner in Vasquez-Velezmoro, Petitioners in the case before this court were sentenced to terms of probation longer than one year.

Thus, they would not be eligible for treatment under the FFOA. As the Eighth Circuit determined, this difference in sentences creates a rational basis for treating petitioners differently from aliens who qualify for conviction expungements under the FFOA. See also Fernandez-Bernal v. Attorney General of the United States, 257 F.3d 1304, 1316-17 (11th Cir. 2001) (holding that an alien sentenced to more than one year of probation in a state court did not raise a meritorious Equal Protection claim because he was not similarly situated).

Even supposing, however, that aliens prosecuted under state rehabilitative statues would qualify under the FFOA, the Eight Circuit reasoned that it would still be reasonable for Congress to grant greater immigration relief for federal defendants than to state defendants because "Congress better knows and can control the pool of defendant aliens who will be eligible for immigration relief via the FFOA, than it can with state defendant aliens rehabilitated through a variety of statutes." 281 F.3d at 698.

In light of the above reasoning, this Court declines to adopt the holding of Lujan-Armendariz. To the extent that Petitioners raise an Equal Protection claim based on a circuit split or the timing of their proceedings, this Court knows of no authority that would support such a claim. Accordingly, Petitioners' claim for relief based on the Equal Protection Clause is denied.

### B. **Substantive Due Process Claim**

Petitioners argue they have a "fundamental liberty interest in being able to live and work in the United States, and in remaining here with [their] famil[ies]." They further argue their fundamental liberty interests were violated by a constellation of factors acting in conjunction: the new definition of conviction enacted in IIRIRA, codified in Section 1101(a)(48)(A); and repeal of section 212(c) relief, which abolished cancellation of removal for those convicted of aggravated felonies. Petitioners argue these factors create a "conclusive presumption" that all LPRs convicted of these offenses are "unworthy" of remaining the United States and such new provisions are unjustifiable and not narrowly tailored to meet compelling state need. Petitioners have not provided the Court with any authority that suggests they have such a broad-based

19

fundamental liberty interest in being able to live and work in the United States. Petitioners cite to <u>Landon v. Plasencia</u>, 459 U.S. 21, 34 (1982), a procedural due process case, in attempting to demonstrate that their "weighty" liberty interest consists of the right "to stay and live and work" in the United States.  Procedural due process arguments do not bolster Petitioners' claim because as the Court has already discussed in this opinion, there is no protected liberty or property interest in remaining eligible for discretionary relief under Section 1229b.  Furthermore, to the extent that Petitioners cite to substantive due process cases, cited in <u>Plasencia</u>, which rejected conclusive presumptions in certain circumstances, Petitioners have not adequately argued why an alien has a fundamental right to live and work in the United States deserving of heightened scrutiny.  Even if such a fundamental right exists, Petitioners have not argued why it is that Congress' broad plenary authority over immigration matters including decisions about which classes of aliens are admissible and deportable and under what circumstances does not constitute a compelling governmental need, and thus survive heightened scrutiny.  <u>See</u>, <u>e.g.</u>, <u>INS v. Chadha</u>, 462 U.S. 919, 941 (1983); <u>Fiallo v. Bell</u>, 430 U.S. 787, 792 (1977) ("[T]he power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.").  In short, Petitioners have not presented the Court with any compelling legal arguments or authority to support their claim.

Accordingly, Petitioners' substantive due process claim must fail.

### C. <u>Statutory Construction:  BIA's Application of Hernandez-Avalos</u>

Petitioners argue the BIA erred as a matter of law when it applied the Fifth Circuit's decision in <u>Hernandez-Avalos</u> and held their offenses were convictions despite deferred adjudication.  Petitioners argue the Fifth Circuit's language disapproving of the BIA's decision in <u>Matter of K-V-D</u> was *dicta* and as such the BIA should have upheld and applied <u>Matter of K-V-D</u> to their cases.  Additionally Petitioners assert the BIA incorrectly decided <u>Roldan</u> because Title 8, Section 1101(a)(48)(A) does not overrule the policy and requirements announced in <u>Manrique</u>.

As mentioned previously in this decision, Petitioners were found removable

because they were previously convicted of aggravated felonies.  See 8 U.S.C. §
1101(a)(48)(A) (providing a conviction consists of finding or admission of guilt plus
some restraint on liberty); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of
an aggravated felony at any time after admission is deportable.").  Under Section
1229b(a)(3) aliens convicted of aggravated felonies are ineligible for cancellation of
removal.

By arguing that the BIA erred in following Hernandez-Avalos and thus refusing to
apply Matter of K-V-D to their claims, Petitioners assert their convictions should not
count as aggravated felonies if their convictions are not classified as felonies under
state law.  Simply put, this claim has been foreclosed by the Fifth Circuit and now
broadly rejected by the BIA.  In fact, Petitioners cite no other reason for this Court to
hold the BIA erred in refusing to apply Matter of K-V-D to their cases other than the fact
that the Fifth Circuit's disapproval of K-V-D amounted to dicta.  However, in In re
Yanez-Garcia, 23 I. & N. Dec. 390 (BIA 2002), the BIA universally adopted the view that
it would defer to the federal courts' interpretation of "drug trafficking crime" and thus a
"drug crime that is a felony under state law but only a misdemeanor under the
[Controlled Substances Act] , constitutes a "drug trafficking crime" under 18 U.S.C. §
924(c) and Section 101(a)(43)(B) of the INA, if such crime meets the definition of
conviction under federal law.  See Hernandez-Avalos, 251 F.3d at 509-10 (disapproving
of the BIA's former rule that Section 924(c) should be interpreted differently in
sentencing and immigration cases).  Cf. Moosa v. INS, 171 F.3d 994, 1005-06 (5th Cir.
1999) (holding that Texas deferred adjudications constitute convictions under 8 U.S.C.
§ 1101(a)(48)(A) because they involve a determination of guilt and some restraint on
liberty); Matter of Punu, 22 I. & N. Dec. 224 (BIA 1998) (same).  Finally, as the BIA has
now fully recognized, the definition of "conviction" and "aggravated felony" is
determined by looking to federal law because "'[t]he immigration laws contain no . . .
indication that they are to be interpreted in accordance with state law.'" Moosa, 171
F.3d at 1006 (citing United States v. Campbell, 167 F.3d 94 (2d Cir. 1999)).

Petitioners' second statutory argument concerns whether deferred adjudication

21

for felony possession of a controlled substance constitutes a "conviction" under the IIRIRA.[8]  The BIA held in <u>Matter of Roldan</u>, Interim Decision 3377 (BIA 1999), that <u>Matter of Manrique</u>, had been superseded in 1996 by the enactment of Section 101(a)(48)(A) of the IIRIRA.  8 U.S.C. § 1101(a)(48)(A) (Supp. II 1996).  However, in <u>Lujan-Armendariz v. INS</u>, 222 F.3d 728 (9th Cir, 2000), the United States Court of Appeals for the Ninth Circuit overruled <u>Roldan</u> in part and required application of the BIA's former rule in <u>Manrique</u> in that circuit.  The BIA has declined to apply the holding in <u>Lujan-Armendariz</u> in circuits outside of the Ninth Circuit, and thus the BIA has determined deferred adjudication constitutes a conviction under IIRIRA.  <u>See</u> <u>In re Salazar-Regino</u>, 23 I. & N. Dec. 223 (BIA 2002).  This argument too has been foreclosed by the Fifth Circuit in <u>Moosa</u>.  171 F.3d at 1005-06 (holding Texas deferred adjudications constitute convictions under 8 U.S.C. § 1101(a)(48)(A) because they involve an adjudication of guilt and some restraint on liberty).

Accordingly, Petitioners' claims for relief based on statutory construction are denied.

## IX.  Conclusion

Pursuant to Federal Rule of Civil Procedure 42, this Court **CONSOLIDATES** the following civil causes of action with civil action 02cv45: 02cv114; 02cv136; 02cv138; 02cv197; 02cv198; 02cv225; 02cv228; 03cv02.

The Court **DECLINES TO ADOPT** the final determination of the R&R and **DENIES** Petitioners' habeas petitions.  Accordingly, the Court makes the following rulings:

02cv45: **GRANTS** Dkt. No. 6; **DENIES** Dkt. No. 31-1; **DENIES AS MOOT** Dkt. No. 31-2; and **GRANTS** Dkt. No. 33.

02cv114: **GRANTS IN PART AND DENIES IN PART** Dkt. No. 9-1; **DENIES AS MOOT** Dkt. No. 11-1; **GRANTS** Dkt. No. 32; and **GRANTS** Dkt. No. 36-1.

---

[8]Petitioners' arguments concerning the BIA's error in applying <u>Roldan</u>, which they assert was incorrectly decided, is presented in only a cursory fashion and presents no legal arguments or authority.

22

02cv136: **GRANTS** Dkt. No. 4-1; **GRANTS** Dkt. No. 27-1; and **GRANTS** 31-1.

02cv138: **GRANTS IN PART AND DENIES IN PART** Dkt. No. 4-1; **DENIES AS MOOT** Dkt. No. 7-1; **GRANTS** Dkt. No. 28; and **GRANTS** Dkt. No. 32-1.

02cv197: **DENIES** Dkt. No. 9-1; and **GRANTS** Dkt. No. 26-1.

02cv198: **GRANTS** Dkt. No. 11-1; **GRANTS** Dkt. No. 27-1; and **GRANTS** Dkt. No. 31-1.

02cv225: **DENIES** Dkt. No. 8-1; **GRANTS** Dkt. No. 25-1; and **GRANTS** Dkt. No. 29-1.

02cv228: **DENIES** Dkt. No. 8-1; **GRANTS** Dkt. No. 18-1; **GRANTS** Dkt. No. 27-1; and **GRANTS** Dkt. No. 31.

03cv02: **DENIES** Dkt. No. 4-1; and **GRANTS** Dkt. No. 23-1.

DONE this 30th day of September 2003, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge